*Attorney Grievance Commission of Maryland v. Erica S. White*, Misc. Docket AG No. 80, September Term, 2014.  Opinion by Hotten, J.

**ATTORNEY DISCIPLINE — SANCTIONS — INDEFINITE SUSPENSION WITH THE RIGHT TO APPLY FOR READMISSION AFTER SIX MONTHS —** Court of Appeals ordered indefinite suspension with the right to apply for readmission after six months for an attorney who admitted ignorance of trust account rules; failed to remediate her misconduct or adhere to the protocols under consecutive Conditional Diversion Agreements with Bar Counsel for prior misconduct concerning her trust account; failed to cooperate with Bar Counsel while under investigation; and failed to implement law practice safeguards during an illness or otherwise protect her clients' interests in conformance with the Rules of Professional Conduct. Respondent engaged in conduct in violation of Maryland Lawyers' Rule of Professional Conduct ("MLRPC"), 1.1, 1.3, 1.4(a) and (b), 1.15(a), 1.16(d), 8.1(a) and (b), 8.4(a), (c), and (d), and Md. Rules 16.606.1(a)(1)-(3), 16-607, 16-609(b) and (c), and § 10-306 of the Business Occupations & Professions Article.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 80

September Term, 2014

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

ERICA S. WHITE

_____

Barbera, C.J.
*Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Hotten,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: May 23, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

This attorney discipline action involves a lawyer who, while representing her clients in separate legal matters, failed to comply with remedial conditions as required under consecutive Conditional Diversion Agreements ("CDA")[1] for prior misconduct concerning her trust account; failed to secure safeguards during an illness to ensure a timely appeal for her client or otherwise protect her client's interests in conformance with the Rules of Professional Conduct; and mismanaged her attorney trust account by repeatedly accumulating negative balances, depositing unearned fees, and maintaining improper record-keeping practices.

Respondent, Erica S. White, a member of the Bar of Maryland, represented Keith Fleming ("Mr. Fleming") in a divorce and custody matter ("Fleming matter") and Karma Sewell-Carpenter ("Ms. Sewell-Carpenter"), in a landlord-tenant dispute ("Sewell matter"). Between March 2012 and November 2013, Respondent was under a CDA with Bar Counsel for prior misconduct involving mismanagement of her attorney trust account. Respondent's CDA was later amended ("Amended CDA"), then subsequently revoked in

---

[1] Conditional diversion in attorney disciplinary matters is distinguishable from the imposition of a sanction. *See Attorney Grievance Comm'n v. Cappell*, 389 Md. 402, 419-20, 886 A.2d 112, 122 (2005). Maryland Rule 16-712(b)(3) grants Bar Counsel the authority to "enter into and implement Conditional Diversion Agreements" with attorneys in order to remedy misconduct. An attorney may be eligible for conditional diversion when his or her professional misconduct was not the result of the following: any willful or dishonest conduct, the cause or basis of the misconduct can be resolved through remediation or alternative programs or mechanisms, and the disposition is in the best interest of the public and the attorney's clients both present and prospective. *See id*. at 421, 886 A.2d at 123.

April 2014 due to Respondent's non-compliance with the terms of the CDA. (collectively, "CDA matter").

On December 30, 2014, Petitioner, the Attorney Grievance Commission of Maryland, acting through Bar Counsel, filed with this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent, based upon her representation of Mr. Fleming and Ms. Sewell-Carpenter, non-compliance with the CDA and Amended CDA, and the mishandling of her trust account throughout this period ("Trust Account matter"). Bar Counsel alleged that Respondent violated the following Maryland Lawyers' Rules of Professional Conduct ("MLRPC"): Rule 1.1 (Competence), Rule 1.3 (Diligence), Rule 1.4(a) and (b) (Communication), Rule 1.15(a) and (d) (Safekeeping Property); 1.16(d) (Declining or Terminating Representation); 8.1(a) and (b) (Bar Admission and Disciplinary Matters); and Rule 8.4(a), (c), and (d) (Misconduct).

Bar Counsel also alleged that Respondent violated Maryland Rules 16-606.1 (Attorney Trust Account Record-Keeping), 16-607 (Commingling of Funds), 16-609 (Prohibited Transactions), and Md. Code (1989, 2010 Repl. Vol) § 10-306 of the Business Occupations & Professions Article ("Bus. Occ. & Prof.") (Misuse of Trust Money).

By Order dated January 9, 2015, this Court transmitted the matter to the Circuit Court for Baltimore City and designated the Honorable Edward R.K. Hargadon ("hearing judge") to render findings of fact and conclusions of law. On April 17, 2015, both parties participated in a scheduling conference call with the hearing judge, setting a hearing for June 24, 2015 at 9:30 a.m. On or about June 22, Respondent informed the court that she

was unable to attend the hearing due to her representation of a client in a murder trial that day.

On July 14, 2015, a hearing was conducted. Present were Bar Counsel and Respondent. Ms. Sewell-Carpenter, Edwin Karr ("Mr. Karr"), Investigator for the Attorney Grievance Commission, Anne Deady, Esquire ("Ms. Deady"), the law practice monitor assigned to Respondent under her Amended CDA, and Laura Burrows, an attorney who worked with Respondent on an unrelated matter, testified on behalf of Bar Counsel. Respondent represented herself and testified. On September 4, 2015, the hearing judge filed with this Court findings of fact and conclusions of law, determining that: (1) relative to the Fleming matter and Respondent's CDA and Amended CDA violations, she violated MLRPC 1.1, 1.4, 1.15,[2] 8.4(a) and (d), and Md. Rule 16.606.1; (2) regarding Respondent's false statements and misrepresentations to Bar Counsel, she violated MLRPC 8.1(a) and (b), 8.4 (a), (c), and (d); (3) relative to the Sewell matter, she violated MLRPC 1.1, 1.3, 1.4, 1.16(d), 8.4(d); and (4) regarding the Trust Account matter, she violated MLRPC 1.1, 1.15(a), 8.4(d), Md. Rules 16-606.1(a)(1)-(3), 16-607, 16-609(b) and (c), and Bus. Occ. & Prof. § 10-306.

On September 22, 2015, Bar Counsel filed its recommendation for sanctions, requesting indefinite suspension with the right to apply for readmission after six months, and took no exceptions to the hearing judge's findings of fact or conclusions of law. On September 23, 2015, Respondent filed general exceptions to the hearing judge's findings

---

[2] A subsection of this Rule was not specified.

and conclusions, which she subsequently amended on September 30, 2015 and February 9, 2016.[3] On February 9, 2016, we heard oral argument. Respondent conceded that she engaged in professional misconduct relative to the alleged charges, but attributed her actions to illness, recuperation after surgery, and difficulties experienced as caretaker of her mother until her death, which collectively impacted her practice during those periods.

For the reasons that follow, we conclude that Respondent violated MLRPC 1.1, 1.3, 1.4(a) and (b), 1.15(a), 1.16(d), 8.1(a) and (b), 8.4(a), (c), and (d), Md. Rules 16.606.1(a)(1)-(3), 16-607, 16-609(b) and (c), and Bus. Occ. & Prof. § 10-306, and will indefinitely suspend her from the practice of law in this State with the right to apply for readmission after six months.

## BACKGROUND

The hearing judge rendered the following findings of fact, which we summarize:

### A. Respondent's CDA, Subsequent Amended CDA, and the Fleming Matter

Respondent was admitted to the Bar of Maryland on November 3, 2007, and currently maintains a law office in Baltimore, Maryland. On March 21, 2012, Respondent entered into a one-year CDA with Bar Counsel.

---

[3] During oral argument, Respondent asserted that the February 9 amendment excepting to the hearing judge's findings and conclusions corrected errors in her prior filing. However, upon our review, both filings appear to be the same.

Pursuant to Md. Rule 16-736(c)(2)(A),[4] Respondent acknowledged that she had engaged in professional misconduct relative to her representation of Mr. Fleming.[5] Under the CDA, Respondent was required to review a Continuing Legal Education DVD on trust account management. However, two months prior to completing the CDA, Respondent failed to fulfill her obligations due to a failure to timely deposit funds into her trust account and to provide client records to Bar Counsel. As a result, on November 25, 2013, Bar Counsel amended Respondent's CDA and assigned Ms. Deady as her law practice monitor. The Amended CDA contained the following conditions:

> Respondent will provide [Ms. Deady] with a copy of her general ledger, individual client ledgers, monthly trust account reconciliation, trust account statement, and corresponding cancelled checks on a monthly basis for her monitor to submit to Bar Counsel for the remainder of the Amended CDA.

> Respondent will attend a meeting with Certified Public Accountant/Commission Investigator Charles Miller [("Mr. Miller")] to review Respondent's financial records and to discuss Respondent's trust

---

[4] Md. Rule 16-736(c)(2)(A) provides, "[b]y signing the Agreement, the attorney (A) acknowledges that the attorney has engaged in conduct that constitutes professional misconduct or is currently incapacitated[.]"

[5] In its Petition, Bar Counsel recounted the following facts relative to Respondent's representation of Mr. Fleming, which we summarize: On September 11, 2011, Mr. Fleming retained Respondent to represent him in his divorce and custody matter in the General Court of Justice, District Court Division, North Carolina ("General Court"). On that same day, Mr. Fleming signed Respondent's retainer agreement and agreed to pay a $1500 non-refundable retainer. Although Respondent initiated *pro hac vice* admission to the North Carolina bar, she did not complete the process because she had no record that the retainer had been paid. Respondent did not maintain trust account records or advise Mr. Fleming of the status of his case. Respondent communicated with the General Court on two occasions, but never entered an appearance on Mr. Fleming's behalf. Respondent contended that she did not seek *pro hac vice* admission because Mr. Fleming did not pay the full $1,500 retainer. In reliance on Respondent's representation, Mr. Fleming did not seek other counsel and missed his scheduled hearing in the General Court.

- 5 -

account questions. Respondent will bring a copy of her general ledger, individual client ledgers, monthly reconciliation and monthly trust account statements from the previous three months with her to the meeting for Mr. Miller to review. Respondent will set a meeting date with Mr. Miller by no later than seven [ ] days after the new effective date of the Amended CDA. The meeting date shall occur within twenty [ ] days of the effective date of the Amended CDA.

[Ms. Deady] shall be required to attend a formal hearing/court proceeding with Respondent within two [ ] months from the new effective date of the Amended CDA and to complete a client observation form in connection with the hearing/proceeding.

[Ms. Deady] shall continue to provide reports to Bar Counsel on a monthly basis and submit each report on the 30th day of the month. In addition, Respondent shall meet with [Ms. Deady] on a monthly basis on the twentieth [ ] day of each month. During the meeting, Respondent shall discuss her Amended CDA in detail, provide any needed trust account records and/or billing documentation to the monitor, and to submit her written report of her biggest challenges and/or goals/accomplishments for the month.

Respondent's Amended CDA shall remain in effect until July 31, 2014.

### i. *Respondent's Interactions with Ms. Deady*

Respondent admitted that during November 2013 through February 2014, she failed to provide the information to Ms. Deady and Mr. Miller regarding her general ledger, individual client ledgers, monthly reconciliation, trust account bank statement, and corresponding cancelled checks on a monthly basis. On November 8, 2013, Respondent met with Ms. Deady in her law office, to review her files. Respondent promised to submit copies of her client ledgers, trust account reconciliation statements, and trust account bank statements per CDA requirements by November 20, 2013. Due to Respondent's other

commitments,[6] Ms. Deady did not timely receive the proper documents for her November 2013 report to Bar Counsel.

Ms. Deady submitted her second monthly report to Bar Counsel on January 10, 2014, which reflected that she contacted Respondent on January 6, 2014 for the required documents. However, Respondent advised that she was unable to comply due to scheduled surgery that same day. Although Respondent promised to provide the documentation after her recuperation, she did not.

Ms. Deady left a voicemail for Respondent on January 30, 2014. In Ms. Deady's third monthly report to Bar Counsel, she advised that Respondent had not contacted her since January 6, 2014. Bar Counsel granted Respondent an eight-day extension to submit her documentation to Ms. Deady. Ms. Deady's fourth monthly report to Bar Counsel on February 28, 2014, reflected that she contacted Respondent on February 25, 2014 to schedule an appointment on February 27, 2014, and noted Respondent's failure to provide any documents or meet with her since November 2013. However, Respondent was unable to meet with Ms. Deady on February 27, citing a need to prepare for a motion and complications from her surgery.

---

[6] On November 20, 2013, Respondent informed Ms. Deady that she had not prepared the requested documents because she had new clients and "had to attend to their cases." Respondent was also unable to meet with Ms. Deady on November 22, 2013 after being requested to do so.

### ii. Respondent's Interactions with Attorney Grievance Commission Investigator, Mr. Karr

In February 2014, Mr. Karr contacted Respondent regarding the impending revocation of her Amended CDA. Mr. Karr conducted an interview of Ms. Sewell-Carpenter on March 6, 2014, but received no response from Respondent after leaving voice messages on March 7 and 10, 2014. On March 11, 2014, Mr. Karr contacted Respondent and scheduled an interview for March 25, 2014, at 11:00 a.m.

During the hearing, Mr. Karr testified that Respondent attempted to cancel the interview, citing an impending trial and inquired whether he could provide her with written questions in advance. Mr. Karr directed her to Assistant Bar Counsel JaCina Stanton ("Ms. Stanton"). Mr. Karr and Ms. Stanton subsequently cancelled the interview and agreed that Respondent could provide a statement under oath.

### iii. Respondent's Failure to Protect Client's Interests

In light of Respondent's upcoming surgery and anticipated recuperation period, Ms. Stanton requested information from Respondent on November 26, 2013 regarding the status of her cases scheduled for January 2014. In a reply e-mail sent on December 5, 2013, Respondent stated:

> I have already discussed the matter with most of my clients and am in the process of discussing it with the rest. I have already addressed the issue of court dates as I have explained to the [c]ourt what my situation is and requested court dates in accordance with my expected return to work. I also advised the [c]ourt that I will notify them if anything changes or I need more time. . . .

On January 24, 2014, Ms. Stanton requested that Respondent provide further information regarding three separate cases that were scheduled for jury trial.[7] Although Respondent indicated that she postponed the cases, they nonetheless remained on the docket for trial. Contrary to Respondent's December 5 e-mail that she was communicating with her clients about their cases, she failed to advise Ms. Sewell-Carpenter about her pending hearing scheduled for January 24, 2014. On March 17, 2014, Respondent informed Bar Counsel that she contacted her clients and the court involving her cases, without providing an explanation regarding the trial date in the Sewell matter.[8]

### B.    *Sewell Matter*

On December 3, 2005, Ms. Sewell-Carpenter signed a commercial lease agreement with ELT Corporation to rent space for a dance studio she operated named Karma's Dance Factory. Rachel Oziel ("Ms. Oziel") and her husband, Madgi Oziel owned ELT. On or about September 4, 2012, Ms. Oziel filed suit against Ms. Sewell-Carpenter on her own behalf, in the amount of $5,997 in the District Court for Baltimore County for failure to

---

[7] Bar Counsel requested updates regarding the following cases: *State v. Nathaniel Simmons* (trial date January 23, 2014); *State v. Jordan Rogers* (trial date January 28, 2014); and *Rachel Oziel v. Karma Sewell-Carpenter* (trial date January 24, 2014).

[8] In *Rogers*, Respondent requested a postponement and had the case scheduled for January 28 because she mistakenly thought her surgery would take place in November or December. Substitute counsel appeared on January 28, to request an additional postponement. In *Simmons*, Respondent requested postponement on October 25, 2013 and was allowed to appear via telephone on January 23, 2014. Respondent provided no explanation for *Sewell*, but withdrew as counsel six days prior to sending correspondence to Bar Counsel on March 17, 2014.

pay rent. (*Oziel v. Sewell*, Case No. 080400197772012). On November 27, 2012, the District Court entered judgment against Ms. Sewell-Carpenter in the amount of $6,907.

Twice during November or December 2012, Respondent discussed possible representation with Ms. Sewell-Carpenter. Ms. Sewell-Carpenter advised Respondent of the November 27 judgment, but Respondent never recommended that Ms. Sewell-Carpenter file an appeal or a motion to revise judgment within thirty days. During the disciplinary hearing, Respondent indicated that she thought she had ninety days to seek an amended or revised judgment.

On February 23, 2013, Ms. Sewell-Carpenter formally retained Respondent after submitting two credit card payments totaling $1,500. That same day, Respondent sent Ms. Sewell-Carpenter an e-mail, outlining the legal services that she would provide, but did not address the likelihood of success. Ms. Sewell-Carpenter never responded to the February 23 e-mail[9] or executed a retainer agreement.

On February 26, 2013, Respondent filed a "Motion to Set Aside Judgment" ("Motion to Set Aside"), ninety-one days after the judgment was entered against Ms. Sewell-Carpenter, based on fraud, mistake or irregularity. The motion was denied on March 13, 2013. Respondent also filed a "Motion for Reconsideration" of the denial of the Motion to Set Aside. During the hearing on June 11, 2013, Respondent neglected to bring Ms. Sewell-Carpenter's file. The court subsequently denied the motion. Throughout

___

[9] Alternatively, Bar Counsel states in its proposed findings of fact and conclusions of law that Ms. Sewell-Carpenter denied that she responded to Respondent's e-mail. During Ms. Sewell-Carpenter's cross-examination at the hearing, she also testified that she did not recall responding to Respondent's e-mail.

this period, Respondent never provided Ms. Sewell-Carpenter with copies of the motions filed on her behalf. Although Respondent advised Ms. Sewell-Carpenter that she would send a copy of her file, she did not do so until December 2013, two months after Ms. Sewell-Carpenter filed a complaint with the Attorney Grievance Commission against Respondent on October 8, 2013.

On November 27, 2013, Ms. Sewell-Carpenter filed a Motion to Vacate Judgment *pro se*. A hearing on the matter was scheduled for January 24, 2014. Ms. Sewell-Carpenter was officially notified of a motions hearing and notice was also sent to Respondent, who remained counsel of record. Respondent claimed that she was absent from her law office throughout the month of January due to illness, neglected to check her mail, and never implemented forwarding procedures during her period of recuperation.

Although Respondent's representation of Ms. Sewell-Carpenter ended in June 2013, she failed to file a motion to strike appearance with the court. Ms. Sewell-Carpenter's motion was subsequently dismissed for her failure to appear for the hearing on January 24. As a result, her wages were garnished in the amount of $6,907 to satisfy the judgment. On February 11, 2014, Ms. Sewell-Carpenter's subsequent motion to reset a hearing date was denied. Respondent did not file a motion to withdraw her appearance as counsel until March 11, 2014.

### C.    *Trust Account Matter*

Bar Counsel subpoenaed Respondent's trust account bank statements from December 2012 to March 2014. During the hearing, Respondent conceded that she had not maintained accurate records or retained checks for her trust account during this period. Between May and July 2013, attorney's fees for two unspecified clients were applied to negative balances. Respondent was unable to identify the particular clients whose funds were affected by the negative balances.

In July 2013, Respondent made a cash withdrawal and subsequently wrote a check payable in October 2013 from her trust account without a memo, both in the amount of $50.00. Respondent also wrote a check payable to "Cash" in the amount of $420, with a memo indicating "USCIS Fee Wolf Case." During the hearing, Respondent conceded that this transaction was violative of trust account rules.

Beginning October 31, 2013, Respondent's trust account had a negative balance of $11.20. The trust account remained in that status for the next five months until March 31, 2014, when her ending trust account balance was $36.00. Respondent conceded that during the period of her CDA or Amended CDA, she neglected to note clients' names on the majority of her checks and deposit slips.

## STANDARD OF REVIEW

"This Court has original and complete jurisdiction over attorney disciplinary proceedings." *Attorney Grievance Comm'n v. Barton*, 442 Md. 91, 119, 110 A.3d 668, 684 (2015) (citations omitted). "Bar counsel ha[s] the burden of proving [the] allegations in the disciplinary petition by clear and convincing evidence." *Attorney Grievance Comm'n v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010). *See also* Md. Rule 16-757(b) ("The [Commission] has the burden of proving the averments of the petition by clear and convincing evidence.").

We conduct an independent review of the record and accept the hearing judge's findings of fact unless they are clearly erroneous. *See Barton*, 442 Md. at 119, 110 A.3d at 684 (citation omitted). Deference is accorded to the hearing judge's findings, who is in the best position, as the fact-finder, to assess the credibility of a witness. *See Edib*, 415 Md. at 706-07, 4 A.3d at 964. *See also* Md. Rule 16-759(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."). "Findings of fact to which neither party takes exception may be treated by us as conclusively established." *Edib*, 415 Md. at 707, 4 A.3d at 964. *See also* Md. Rule 16-759(b)(2)(A).

However, if exceptions are filed, "the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof" outlined in Md. Rule 16-757 (b).[10]  *See* Md. Rule 16-759(b)(2)(B).  We review *de novo*, the hearing judge's conclusions of law. *See Edib*, 415 Md. at 707, 4 A.3d at 964. *See also* Md. Rule 16-759(b)(1) ("The Court of Appeals shall review *[de novo]* the [hearing] judge's conclusions of law.").

## DISCUSSION

### A.    *Findings of Fact*

Bar Counsel does not except to any of the hearing judge's findings of fact. However, Respondent excepts to the findings relative to her interactions with Commission Investigator, Mr. Karr.  Respondent contends that her exhibits evidenced a series of communications with Bar Counsel, reflecting that she asked whether Mr. Karr could provide questions in advance to ensure that the interview "was productive and went smoothly."  Respondent asserts that she did not refuse to meet with Mr. Karr, although the hearing judge adopted the position that Bar Counsel and Mr. Karr decided that Respondent would provide a statement under oath, in lieu of her meeting with Mr. Karr.

---

[10] Md. Rule 16-757(b) provides,

**(b) Burdens of Proof**.  The [Commission] has the burden of proving the averments of the petition by clear and convincing evidence.  A respondent who asserts an affirmative defense or a matter of mitigation or attenuation has the burden of proving the defense or matter by a preponderance of the evidence.

We shall overrule Respondent's exceptions. Although the evidence does not reflect that Respondent refused to meet with Mr. Karr,[11] it does demonstrate that she did request questions "ahead of time," which prompted the alternate resolution agreed upon by Ms. Stanton and Mr. Karr. In response to her request, Ms. Stanton advised, in part:

> You advised Commission Investigator, [Mr.] Karr that you would not sit for an interview unless you were provided with written questions in advance. The Maryland Rules do not require us to provide respondents with written questions prior to interviews.
>
> Pursuant to [Md.] Rule 16-732, we are requesting that you attend a Statement under oath for this matter. . . .

Thus, the hearing judge's findings that 1) Respondent "inquired whether Mr. Karr would provide her with written questions prior to being interviewed[;]" 2) Mr. Karr subsequently

---

[11] In Mr. Karr's second interim report, he noted:

This writer asked [Respondent] what dates she would be available for an interview. [Respondent] was hesitant to provide any dates for the interview. . . .

[Respondent] stated that she wanted to cooperate with the investigation and be interviewed. [Respondent] stated that she would be able to be interviewed on March 25, 2014[,] this writer immediately told [Respondent] that I would meet her at her office on that date . . . and [Respondent] reluctantly agreed.

[Respondent] then attempted to back out of the interview stating that she had a trial the next week and doesn't like to "do anything" a week prior to a trial. [Respondent] went onto state[] that she now preferred not to be interviewed that date since she would have this complaint "on her mind."

This writer again advised [Respondent] that it appears that she doesn't want to be interviewed and was attempting to stall this investigation. [Respondent] stated that she did want to be interviewed and grudgingly agreed to the interview date. . . .

advised that this was not standard protocol; and 3) Mr. Karr and Ms. Stanton agreed that Respondent would provide a statement under oath in lieu of an interview, were consistent with the evidence.

Respondent excepts to the hearing judge's findings regarding the extent of her communications with clients, as reflected in her March 17, 2014 correspondence to Bar Counsel. She contends that those client communications began on November 26, 2013, and during that time, the averments were accurate, with the exception of Ms. Sewell-Carpenter. Although Respondent concedes that she neglected the Sewell matter, she nonetheless avers that she did not have a duty to Ms. Sewell-Carpenter because she "acted on her own" without Respondent's knowledge when she filed motions *pro se*.

We overrule Respondent's exceptions. As an initial matter, the fact that Ms. Sewell-Carpenter filed motions *pro se*, is of no consequence to the hearing judge's findings that she failed to advise Ms. Sewell-Carpenter about the January 2014 hearing—after receiving notification from the court. Moreover, the December 5, 2013 e-mail to Bar Counsel, Respondent stated:

> I have already discussed the matter with most of my clients and am in the process of discussing it with the rest. . . .

Although Respondent references the March 17 correspondence to Bar Counsel, it was Respondent's December 5 e-mail that the hearing judge relied upon in determining that Respondent misrepresented the client communications regarding their cases. Respondent neglected to correct any prior misrepresentations in the March 17 correspondence.

Additionally, Respondent conceded that she neglected the Sewell matter, although she remained counsel of record until she withdrew her representation in March 2014.

Respondent excepts to the hearing judge's findings regarding initial conversations with Ms. Sewell-Carpenter, where the hearing judge stated, in part, "Ms. Sewell[-Carpenter] advised Respondent of the judgment, but Respondent never informed Ms. Sewell[-Carpenter] that she had to file an appeal, or a motion to revise judgment, within thirty days of the judgment." Respondent contends that if Mr. Karr's statements in his interim report are believed, his interview with Ms. Sewell-Carpenter in March of 2014 reflects that Respondent was not hired until after her trial and entry of judgment on November 27, 2012, and that her $1,500 fee payment was not made until February 23, 2013. Respondent further contends that Mr. Karr's report demonstrated Ms. Sewell-Carpenter's understanding that Respondent would not perform any work on her behalf until she remitted full payment.

We shall overrule Respondent's exceptions. We acknowledge that Ms. Sewell-Carpenter conceded that she did not consider Respondent her attorney until January or February of 2013. However, Respondent's contentions do not negate that once Respondent became aware of Ms. Sewell-Carpenter's judgment, she failed to inform her of the urgency of the situation or the time-sensitive nature of an appeal in the matter.

It is well settled that in forming an attorney-client relationship, a formal contract or retainer agreement is not necessary. *See Attorney Grievance Comm'n v. Shoup*, 410 Md. 462, 489, 979 A.2d 120, 136 (2009). ("[A]n explicit agreement or payment arrangement is not a prerequisite to the formation of an attorney-client relationship."). Thus, "the

determination of whether an attorney-client relationship exists can, and often must, be implied from facts and circumstances of a given case." *Attorney Grievance Comm'n of Maryland v. Shaw*, 354 Md. 636, 650-51, 732 A.2d 876, 883 (1999). *See also Attorney Grievance Comm'n of Maryland v. Brooke*, 374 Md. 155, 175, 821 A.2d 414, 425 (2003) ("The [attorney-client] relationship may arise by implication from a client's reasonable expectation of legal representation and the attorney's failure to dispel those expectations.").

Although payment was not remitted until February 23, based upon the initial communications[12] between Respondent and Ms. Sewell-Carpenter, it was reasonable for the hearing judge to presume the existence of an attorney-client relationship, thereby triggering Respondent's obligations to advise accordingly, under MLRPC 1.1, 1.3, and 1.4. Moreover, although the evidence reflects that Respondent advised Ms. Sewell-Carpenter that she would not work on her case until full payment was received, the evidence does not

---

[12] Ms. Sewell-Carpenter testified as follows:

[Ms. Stanton]: And when did you initially have your first conversation with [Respondent]?

[Ms. Sewell-Carpenter]: It had to be the early part of—it had to be September—I mean, October or November. . . .

[Ms. Stanton]: And when did you consider [Respondent] your attorney?

[Ms. Sewell-Carpenter]: In February when I—we discussed everything, January/February. . . . So I think it was the early part of February that we actually started talking and then mid-February, towards the end, is when we made arrangements to—I paid her and then we really started going on with the case after that. But she told me prior to me paying her what she can and can't—you know, what can happen. So it wasn't anything that was in black and white. It was conversation-wise. . . .

demonstrate that Respondent "dispelled" any expectations of legal representation prior to that point.

Respondent also excepts to the hearing judge's finding that Ms. Sewell-Carpenter did not respond regarding the scope of her representation and fees, because the evidence reflects that Ms. Sewell-Carpenter stated in a reply e-mail, "[t]his will be fine. I agree." Although we sustain Respondent's exception, Ms. Sewell-Carpenter's reply to Respondent's February 23 e-mail as expressed, *supra*, does not impact any of the charges asserted by Bar Counsel. Respondent neglected the Sewell matter and violated several Rules of Professional Conduct and Maryland trust account rules.

Respondent excepts to the hearing judge's findings regarding her responsibility for Ms. Sewell-Carpenter filing a *pro se* motion to vacate the November 27, 2012 judgment against her. Respondent contends that "[t]here was no testimony" indicating that Ms. Sewell-Carpenter considered Respondent as her attorney at that time or that she had informed Respondent of the Motion to Vacate and reset of the hearing date. Respondent also contends that she had already "wound down" her practice due to her surgery. We shall overrule Respondent's exceptions. As noted *supra*, Respondent conceded, and we agree, that she neglected matters pertaining to the Sewell matter. Without express termination, Respondent remained counsel of record until she withdrew her representation in March 2014.

Respondent excepts to the hearing judge's findings that she did not provide Ms. Sewell-Carpenter with copies of the motions filed on her behalf during the course of her representation. She asserts that copies of the motions were attached to an e-mail she sent

on March 20, 2013, to the e-mail addresses Ms. Sewell-Carpenter verified during the hearing.

We shall overrule Respondent's exceptions and accept the hearing judge's findings in light of his opportunity to assess the credibility of the witnesses. *See Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 54, 930 A.2d 328, 335 (2007) (noting that "we accept the hearing judge's findings of fact as *[prima facie]* correct unless shown to be 'clearly erroneous,' and we give due regard to the hearing judge's opportunity to assess the credibility of witnesses."). The hearing judge found credence in Ms. Sewell-Carpenter's testimony that she did not receive copies of motions until July 2014, approximately four months after Respondent withdrew as counsel. We conclude that this finding was not erroneous based upon the evidence presented.

Respondent excepts to the hearing judge's findings regarding the negative balances in her trust account. She contends that the balances were a result of maintenance fees assessed to the account, which were subsequently refunded. Respondent also contends that the maintenance fees were assessed during a period when there was no activity because she was "winding down" her practice in preparation for surgery. We shall overrule Respondent's exceptions. Although the negative balances were due to maintenance fees that were subsequently refunded, she failed to maintain the account in accordance with the trust account rules discussed, *infra*.

Respondent excepts to the hearing judge's findings regarding the $420 USCIS check made payable to "Cash." She contends that a copy of the check admitted into evidence indicates that the cash withdrawal was immediately payable as a bank check to USCIS,

- 20 -

with a confirmation receipt verifying same. Nonetheless, we shall overrule her exceptions. As we discuss *infra*, Respondent's practices contravened the trust account rules requiring proper record-keeping.

### B. Conclusions of Law

In light of the foregoing findings of fact, the hearing judge concluded that Respondent engaged in professional misconduct in violation of the MLRPC 1.1 (Sewell, Trust, and CDA/Fleming Matters), 1.3 (Sewell Matter), 1.4 (Sewell and CDA/Fleming Matter, 1.15(a) (Trust and CDA/Fleming Matter), 1.16(d) (Sewell Matter), 8.1(a) (Sewell Matter) and (b) (CDA/Fleming Matter), 8.4(a), (c) (CDA/Fleming Matter), and (d), Md. Rules 16-606.1(a)(1)-(3) (Trust and CDA/Fleming Matter), 16-607, 16-609(b) and (c), and Bus. Occ. & Prof. § 10-306 (collectively, Trust Account matter).[13]

Bar Counsel does not except to the hearing judge's conclusions of law. Although Respondent generally excepts to the hearing judge's findings of fact, none of her exceptions specifically address the hearing judge's conclusions of law. For the reasons that follow, we shall uphold the conclusions of law.

---

[13] The hearing judge concluded that Respondent violated MLRPC 1.1, 1.4, 1.15, 8.4(a) and (d), and Md. Rule 16.606.1 in connection with her representation of Mr. Fleming and by defaulting on the conditions contained in the CDA, then failing to fulfill the conditions of the Amended CDA. In Respondent's Amended CDA, she conceded to violations of the foregoing Rules. Accordingly, we uphold the conclusions of the hearing judge relative to the violations alleged in connection with the Fleming and CDA matters without extensive discussion.

## MLRPC 1.1 (Competence)

MLRPC 1.1 provides, "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." MLRPC 1.1 requires that an attorney act with the "requisite preparation and thoroughness" when representing a client. *See Attorney Grievance Comm'n of Maryland v. Mitchell*, 445 Md. 241, 252, 126 A.3d 72, 78 (2015). An attorney also violates this Rule by failing to act or acting in an untimely manner, which results in harm to a client. *See Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 319, 44 A.3d 344, 357 (2012).

Clear and convincing evidence supports the hearing judge's conclusion that Respondent violated MLRPC 1.1 when she filed the Motion to Set Aside Ms. Sewell-Carpenter's November 27, 2012 judgment beyond the thirty-day deadline. *Attorney Grievance Comm'n v. Walker-Turner*, 428 Md. 214, 228 51 A.3d 553, 561-62 (2012) (stating that an attorney's "failure to file a necessary appeal or revisory motion within the allowable time period may constitute incompetence in the practice of law."). *See also Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 253, 68 A.3d 808, 819 (2013) (stating that "[a] failure to make the proper and required filings in a client matter demonstrates a lack of the appropriate preparation and thoroughness necessary to provide competent representation" in violation of MLRPC 1.1.).

The evidence demonstrates that Respondent also violated MLRPC 1.1 by failing to sufficiently explain the likelihood of her success in filing the motion ninety-one days after the judgment was entered. Respondent's confusion regarding the deadline for filing post-

judgment motions under the Maryland Rules and the lack of effort to clarify her misunderstandings is also violative of this Rule. *See Attorney Grievance Comm'n v. Zhang*, 440 Md. 128, 158, 100 A.3d 1112, 1129 (2014) ("Evidence of a failure to apply the requisite thoroughness and/or preparation in representing a client is sufficient alone to support a violation of [MLRPC] 1.1.") (internal quotations omitted).

An attorney's failure to properly maintain his or her trust account demonstrates incompetence, in violation of MLRPC 1.1. *See Attorney Grievance Comm'n v. Mungin*, 439 Md. 290, 305, 96 A.3d 122, 130 (2014). Additionally, "[s]ound record-keeping is an essential part of competent representation." *Attorney Grievance Comm'n v. London*, 427 Md. 328, 353, 47 A.3d 986, 1001 (2012). Thus, competent representation requires, *inter alia*, that an attorney maintain detailed, accurate, and accessible records. *Id*.

Clear and convincing evidence also supports the hearing judge's conclusion that Respondent violated MLRPC 1.1 by: 1) failing to maintain proper client records throughout the entirety of her CDA and Amended CDA; 2) failing to comply with the basic requirements of appropriate trust account management in her accounting practices; 3) failing to pay attention to her trust account, which resulted in repeated negative balances from October 31, 2013 through March 31, 2014; and 4) admitting ignorance of the trust account rules.

Respondent's actions involving tracking her time, disbursing funds, and maintaining client ledgers also demonstrated a lack of competence in appropriate billing practices and handling of client funds. Moreover, as the hearing judge concluded, Respondent's non-compliant record-keeping and accounting practices demonstrated a lack

- 23 -

of competence in "this vital area of law practice management[,]" which violated MLRPC 1.1.

## MLRPC 1.3 (Diligence)

MLRPC 1.3 provides, "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Inexcusable delay in withdrawing as counsel constitutes a violation of this Rule. *See Attorney Grievance Comm'n v. Steinberg,* 395 Md. 337, 363, 910 A.2d 429, 444 (2006).

Clear and convincing evidence supports the hearing judge's conclusion that Respondent's failure to withdraw as counsel in the Sewell matter until March 11, 2014, when the case concluded in June 2013, violated Rule 1.3. *See id*. (holding that attorney's "inexcusable six-month delay in withdrawing formally from the court case, after his representation was terminated, demonstrates a lack of requisite diligence and promptness."). Accordingly, Respondent also violated Rule 1.3 for failing to timely deliver Ms. Sewell-Carpenter's file upon her request beyond the conclusion of the case. *See Attorney Grievance Comm'n v. Awuah*, 374 Md. 505, 522, 823 A.2d 651, 661(2003) (holding that the attorney violated MLRPC 1.3 by failing to deliver his client's file after termination of the representation, despite the client's repeated requests).

**MLRPC Rule 1.4 (Communication)**

**MLRPC 1.4 provides:**

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

"[MLRPC] 1.4 requires a lawyer to comply promptly with reasonable requests from the client for information, to explain on-going matters to the extent reasonably necessary to allow a client to make informed decisions, and to keep the client informed about the status of pending matters." *Steinberg*, 395 Md. at 363, 910 A.2d at 444.

Clear and convincing evidence supports the hearing judge's conclusion that Respondent violated MLRPC 1.4 by failing to advise Ms. Sewell-Carpenter of the statutory time to appeal a judgment and file a motion to revise same, then failing to advise regarding their impact on her case. *See Attorney Grievance Comm'n v. Brown*, 426 Md. 298, 321-22, 44 A.3d 344, 358-59 (2012) (holding that the attorney's failure to adequately

- 25 -

communicate matters relevant to her client's case, advise client about notice of contemplated dismissal issued in his claim, or of the discovery sanctions and motion for default judgment against him, violated MLPRC 1.4). Ms. Sewell-Carpenter's ability to appeal the judgment entered against her was significantly diminished due to Respondent's handling of her post-judgment appeal. *See Steinberg*, 395 Md. at 363, 910 A.2d at 444 (noting that client "suffered significant set-backs in her efforts to overturn the sanctions imposed due to the omissions of [the attorney].").

Clear and convincing evidence also demonstrates that Respondent violated MLPRC 1.4 when she failed to return Ms. Sewell-Carpenter's file until several months after her request. *See Steinberg*, 395 Md. at 363, 910 A.2d at 444 (holding that the attorney violated MLRPC 1.4 by failing to return her client's file until "much later" after representation was terminated, despite client's repeated requests).

### MLRPC Rule 1.15(a) and (d) (Safekeeping Property)

MLPRC 1.15(a) provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

"MLRPC 1.15(a) requires an attorney to maintain client funds in a trust account, separate from the attorney's personal and operating funds." *Attorney Grievance Comm'n*

*v. Moeller*, 427 Md. 66, 73, 46 A.3d 407, 411 (2012). Thus, an attorney's failure to maintain a trust account separately from his or her personal funds is violative of this Rule. *See id*.

Clear and convincing evidence supports the hearing judge's conclusion that Respondent violated Rule 1.15(a) by: 1) failing to hold property of clients and third persons in trust separate from her own property; 2) failing to remove her earned fees to a separate operating account before making cash disbursements to herself; 3) failing to create and maintain a record of account funds in accordance with the Maryland Rules under Title 16, Chapter 600;[14] and 4) failing to create and maintain records that accurately reflected her receipt and distribution of client funds, or distribution of earned fees. *See Attorney Grievance Comm'n v. Gage-Cohen*, 440 Md. 191, 202, 101 A.3d 1043, 1049 (2014) (holding that the attorney's failure to maintain trust account records and mismanagement of client funds violated MLRPC 1.15(a) and (c), among other trust account management rules); *Attorney Grievance Comm'n v. Obi*, 393 Md. 643, 660, 904 A.2d 422, 432 (2006) ("[A]n attorney may not avoid responsibility for misuse of his or her trust account, even if such misuse was inadvertent.").

---

[14] Title 16, Chapter 600 is a counterpart rule to MLRPC 1.15 and Md. Code § 10-301 *et seq*., and outlines the rules applicable to attorney trust accounts. *See* Md. Rule 16-600 *et seq*.

Although Bar Counsel alleged that Respondent also violated MLRPC 1.15(d),[15] the hearing judge did not address it. Nonetheless, Respondent's failure to properly maintain client trust account funds and records similarly violates MLRPC 1.15(d). Additionally, given Respondent's violation of MLRPC 1.15(a) and (d), and her concession to a violation of Md. Rule 16.606.1(a)(1)-(3)[16] (Attorney Trust Account Identification Records, Deposits

---

[15] Subsection (d) provides:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

[16] Md. Rule 16.606.1 provides, in pertinent part:

**(a) Creation of Records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

(1) *Attorney Trust Account Identification*. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature. . . .

(2) *Deposits and Disbursements*. A record for each account that chronologically shows all deposits and disbursements[.] . . .

(3) *Client Matter Records*. A record for each client matter in which the attorney receives funds in trust[.] . . .

Md. Rule 16-606.1(a)(1)-(3).

and Disbursement Records, and Client Matter Records) in her Amended CDA, clear and convincing evidence supports the hearing judge's conclusion that Respondent also violated Md. Rules 16-607[17] (Commingling of Funds) and 16-609(b) and (c)[18] (Prohibitions Against Cash Disbursements and Negative Balances in Attorney Trust Accounts), and Bus. Occ. & Prof. § 10-306[19] (Trust Money Restrictions).

Specifically, clear and convincing evidence demonstrates that Respondent: 1) conceded to mishandling client matter records and failing to create and maintain required trust account records, in violation of Md. Rule 16-606.1(a)(1)-(3); 2) admitted to commingling personal funds with client funds by incorrectly depositing earned attorney's fees into her trust account for two cash transactions, in violation of Md. Rule 16-607; 3)

---

[17] Md. Rule 16-607 provides, in pertinent part:

**(a) General Prohibition.** An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16-604 or permitted to be so deposited by section b. [not applicable] of this Rule.

[18] Md. Rule 16-609 provides, in pertinent part:

**(b) No Cash Disbursements.** An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer, and no cash withdrawal may be made from an automated teller machine or by any other method. All disbursements from an attorney trust account shall be made by check or electronic transfer.

**(c) Negative Balance Prohibited.** No funds from an attorney trust account shall be disbursed if the disbursement would create a negative balance with regard to an individual client matter or all client matters in the aggregate.

Md. Rule 16-609(b) and (c).

[19] Bus. Occ. & Prof. § 10-306 provides, "[a] lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

maintained client ledgers, which indicated that she made cash disbursements to herself for earned fees on three separate occasions in 2013; 4) maintained negative trust account balances from October 2013 to March 2014, in violation of Md. Rule 16-609(b) and (c); and 5) failed to maintain two unknown clients funds in trust, in May 2013 and August 2013. *See Gage-Cohen*, 440 Md. at 200-02, 101 A.3d at 1048-49 (acknowledging that the attorney's violation of MLRPC 1.15(a) was also violative of the attorney trust account rules outlined in Md. Rule 16-600 *et seq*. and Bus. Occ. & Prof. § 10-306). *See also id*. at 201, 101 A.3d at 1048 ("Consistent with MLRCP 1.15, this [R]ule requires attorneys to keep all client funds in a trust account until earned as fees or otherwise distributed in accordance with the representation agreement.").

### MLRPC Rule 1.16(d) (Declining or Terminating Representation)

MLRPC 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

In the absence of a proper charging lien, "[w]hen a client requests his or her file from an attorney at the end of the representation, MLRPC 1.16(d) requires the attorney to surrender the portions of the file (or a copy) to which the client is entitled. . . ." *Brown*, 426 Md. 298, 322, 44 A.3d 344, 359 (2012).

Clear and convincing evidence supports the hearing judge's conclusion that Respondent violated MLRPC 1.16(d) when Ms. Sewell-Carpenter attempted to retrieve a

copy of her file from Respondent on several occasions after the case or representation was terminated, to no avail. *See id.* (holding that the attorney's failure to comply with clients request for files after termination of representation violated MLRPC 1.16(d)).

**MLRPC 8.1(a) (Knowingly Making a False Statement of Material Fact) and (b) (Failure to Cooperate with Bar Counsel Requests for Information)**

MLRPC 8.1 provides:

> An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
>
> (a) knowingly make a false statement of material fact; or
>
> (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

Under Rule 8.1(a), an attorney shall not knowingly make a false statement of material fact in connection with, *inter alia*, a disciplinary matter. *See* MLRPC 8.1(a). "A violation of MLRPC 8.1(a) will result whenever an attorney makes intentional misrepresentations to Bar Counsel." *Mitchell*, 445 Md. at 259, 126 A.3d at 82. *See also Attorney Grievance Comm'n v. Wills*, 441 Md. 45, 56, 105 A.3d 479, 486 (2014) (noting that MLRPC 8.1(a) is violated "when an attorney intentionally misleads Bar Counsel about the attorney's knowledge and ability to provide information to assist in the investigation.").

Similarly, MLPRC 8.1(b) is violated when an attorney fails to respond to Bar Counsel's lawful requests for information. *Id.* "MLRPC 8.1(b) compels attorneys to

demonstrate candor and cooperation with the admission and disciplinary authorities of the Bar." *Attorney Grievance Comm'n v. Hamilton*, 444 Md. 163, 191, 118 A.3d 958, 974 (2015).

Clear and convincing evidence supports the hearing judge's conclusions that Respondent violated MLRPC 8.1(a) when she represented to Bar Counsel that she was communicating with, and protecting her clients' interests during the months of December 2013 and January 2014, yet she failed to provide Ms. Sewell-Carpenter with the court's notice of her January 2014 hearing. Although the notice was delivered to Respondent's office, she did not check her mail or implement forwarding procedures to ensure receipt during her recuperation period.

Accordingly, Respondent's misrepresentation of the handling of her clients' cases to Bar Counsel was violative of MLRPC 8.1(a). *See Attorney Grievance Comm'n v. Kapoor*, 391 Md. 505, 523, 530-31, 894 A.2d 502, 513, 517 (2006) (holding that the attorney violated MLRPC 8.1(a) when he made a knowing and false statement of material fact to Bar Counsel during disciplinary investigation regarding his client's payment for legal services).

Clear and convincing evidence also supports the hearing judge's conclusion that Respondent violated MLRPC 8.1(b) when she failed to provide Ms. Deady with documents related to her CDA violation. The evidence demonstrates that Respondent failed to provide Ms. Deady with the documents requested and displayed evasive behavior throughout Bar Counsel's investigation in violation of Rule 8.1(b). *See Attorney Grievance Comm'n v. Fraidin*, 438 Md. 172, 200, 91 A.3d 1078, 1094-95 (2014) (holding that the attorney

violated MLRPC 8.1(b), "'by failing to timely provide information and documentation requested by Bar Counsel' regarding [her] bank accounts[.]"). *See also Attorney Grievance Comm'n v. Butler*, 441 Md. 352, 359, 107 A.3d 1220, 1224-25 (2015) (holding that the attorney violated MLRPC 8.1(b) by repeatedly and untimely failing to respond to Bar Counsel's requests during disciplinary investigation).

### MLRPC 8.4(c) (Dishonesty, Fraud, Deceit or Misrepresentation)

MLPRC 8.4(c) provides, "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" "Dishonest acts, in and of themselves are violative of [MLRPC] 8.4(c)." *Attorney Grievance Comm'n v. Barnett*, 440 Md. 254, 266, 102 A.3d 310, 318 (2014) (citation omitted).

Clear and convincing evidence supports the hearing judge's conclusion that Respondent violated MLRPC 8.4(c) by misrepresenting to Bar Counsel on December 5, 2013 and March 17, 2014 that she protected her clients' interests during her illness. *See Attorney Grievance Comm'n v. Brown*, 415 Md. 269, 278-79, 999 A.2d 1040, 1046 (2010) (holding that attorney's false statements to Bar Counsel violated MLRPC 8.4(c)). *See also Wills*, 441 Md. at 57, 105 A.3d at 487 (holding that the attorney's misrepresentation to Bar Counsel, *inter alia*, was "laden with deceit and dishonesty," in violation of MLRPC of 8.4(c)). Moreover, "misappropriation of client funds is 'dishonest conduct' that also is 'prejudicial to the administration of justice in violation of [MLRPC] 8.4(c). . . .'" *Attorney Grievance Comm'n v. Kum*, 440 Md. 372, 385, 102 A.3d 777, 784 (2014).

## MLRPC Rule 8.4(d) (Conduct that is Prejudicial to the Administration of Justice)

MLRPC 8.4(d) provides, "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" A lawyer violates this Rule "where the [attorney's] conduct would negatively impact the perception of the legal profession of a reasonable member of the public." *See Attorney Grievance Comm'n v. Haley*, 443 Md. 657, 674-75, 118 A.3d 816, 826 (2015).

The misappropriation of client funds constitutes dishonest conduct that is prejudicial to the administration of justice. *See Kum, supra. See also Attorney Grievance Comm'n v. Carithers*, 421 Md. 28, 56-57, 25 A.3d 181, 197-98 (2011) (holding that the attorney's misappropriation of funds and failure to maintain a client trust account was conduct prejudicial to the administration of justice). *See Attorney Grievance Comm'n v. Davy*, 435 Md. 674, 707, 80 A.3d 322, 341 (2013) (noting that "the commingling of personal and client funds, including the failure to maintain a separate [client] trust account, is prejudicial to the administration of justice.").

Clear and convincing evidence supports the hearing judge's conclusion that Respondent's negligent trust account management and admitted errors was conduct prejudicial to the administration of justice, in violation of MLRPC 8.4(d). *See Attorney Grievance Comm'n v. Moeller*, 427 Md. 66, 74, 46 A.3d 407, 411-12 (2012) (holding that a violation of MLRPC Rule 1.15(a) was prejudicial to the administration of justice and thus, violative of MLRPC Rule 8.4(d)).

Clear and convincing evidence also supports the hearing judge's conclusion that

Respondent violated MLRPC 8.4(d) by failing to protect Ms. Sewell-Carpenter's interests when she neglected to check her mail or implement forwarding procedures during her surgical recuperation. As a result, Ms. Sewell-Carpenter was denied the opportunity to continue her case. "Not every unnecessary delay or failure to carry out duties expeditiously violates [Rule 8.4(d)]." *Attorney Grievance Comm'n v. Smith*, 442 Md. 14, 31, 109 A.3d 1184, 1194 (2015). However, "[a]n attorney [violates] MLRPC 8.4(d) when the attorney's conduct 'reflects negatively on the legal profession and sets a bad example for the public at large.'" *Id*. (citation omitted). Respondent's failure to implement proper safeguards during her illness to protect Ms. Sewell-Carpenter's interests reflects negatively on the legal profession, in further violation of this Rule.

### MLRPC 8.4(a) (Violating the MLRPC)

MLRPC 8.4(a) provides, "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another[.]" An attorney violates MLRPC 8.4(a) by violating any of the accompanying rules of professional conduct. *See Attorney Grievance Comm'n v. Gerace*, 433 Md. 632, 645, 72 A.3d 567, 574 (2013) ("Rule 8.4(a) is violated when other Rules of Professional Conduct are breached.").

Clear and convincing evidence supports the hearing judge's conclusion that by violating MLRPC 1.1, 1.3, 1.4, 1.15(a), 1.16(d), 8.1(a) and (b), and 8.4(c), and (d), Respondent also violated MLRPC 8.4(a). See *Attorney Grievance Comm'n v. Adams*, 441 Md. 590, 611, 109 A.3d 114, 126 (2015) ("The violation of any other rule of professional misconduct is thereby a violation of MLRPC 8.4(a).") (citation omitted).

- 35 -

**Sanction**

It is well settled that the purpose of attorney discipline is not to punish the erring attorney, but rather, to protect the public. *Attorney Grievance Comm'n v. Mixter*, 441 Md. 416, 527 109 A.3d 1, 68 (2015). Attorney discipline is also intended to deter other lawyers from violating the MLRPC and maintain the integrity of the legal profession. *See Adams*, 441 Md. at 611-12, 109 A.3d at 126. Thus, "[w]e evaluate an attorney grievance matter on its own merits and impose sanctions 'that are commensurate with the nature and gravity of the violations and the intent with which they were committed.'" *Mixter*, 441 Md. at 527, 109 A.3d at 68. We also "consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Id*.

Respondent did not recommend a sanction. However, Bar Counsel recommended that Respondent be indefinitely suspended, with the right to apply for readmission after six months. Bar Counsel submits that the "core violations" supporting indefinite suspension are "the nature and severity, as well as the type of charges involved, in violation of [MLPRC] 1.1, 1.15(a), 8.4(c), and 8.4(d)[]" and Respondent's "failure to create and maintain accurate records of client trust money, in violation of [MLPRC] 1.15(a)."

Bar Counsel directs this Court's attention to our opinion in *Attorney Grievance Comm'n v. Mba-Jonas*, 397 Md. 690, 919 A.2d 669 (2007) ("*Mba-Jonas I*") and *Attorney Grievance Comm'n v. Mba-Jonas*, 402 Md. 334, 936 A.2d 839 (2007) ("*Mba-Jonas II*") in particular, for the proposition that indefinite suspension is the appropriate sanction for numerous trust account violations and misrepresentations to Bar Counsel during a disciplinary investigation.

- 36 -

In *Mba-Jonas I*, the attorney entered into a CDA with Bar Counsel to remediate his failure to maintain records of fee disbursements from his escrow account. *See id*. 397 Md. at 695, 919 A.2d 672. While under the CDA, the attorney's law practice monitor reported to Bar Counsel several instances of irregularities and improper fee disbursements in the attorney's escrow account. *Id*. at 695-97, 919 A.2d at 672-73. Specifically, the attorney's account was overdrawn on three occasions, which resulted in overdraft fees, the attorney improperly notated settlement checks, and he used settlement checks for unintended purposes. *Id*. at 696, 919 A.2d at 673.

The monitor also reported that the attorney maintained inaccurate settlement sheets with minimal accounting records, failed to maintain a ledger, and routinely "post dated check[s] to accommodate clients." *Id*. at 697, 919 A.2d 673. The attorney also conceded that he failed to reconcile his account on a monthly basis and left Personal Insurance Protection funds in the account to cover fees. *Id*. As a result of the attorney's misconduct and non-compliance, the CDA was subsequently revoked. *Id*. at 695, 919 A.2d 672.

This Court upheld the conclusions of the hearing judge relative to violations of MLRPC 1.15, 8.4(a), and Md. Rules 16-604 and 16-607. However, we further concluded that the attorney also violated Md. Rule 16-609 and Bus. Occ. & Prof. § 10-306, given that both rules related to the attorney's misuse of his escrow account, *see id*. at 700, 919 A.2d at 675, as well as MLRCP 8.4(d), because his conduct was "prejudicial to the administration of justice." *Id*. at 701, 919 A.2d at 676.

In ordering indefinite suspension with the right to apply for readmission after ninety-days, this Court determined that the attorney's prior opportunity to remediate his conduct under the CDA was particularly relevant. We reasoned:

> [Mba-Jonas] was afforded the opportunity of a conditional diversion agreement. That agreement was terminated when the monitor charged with checking and keeping an eye on [his] escrow account, signaled a problem and it was learned that [he] had not changed his accounting practices. . . . Moreover, we are satisfied that [an indefinite suspension] should require [Mba-Jonas] to demonstrate lessons learned and, critically, that the sloppiness[20] which has characterized his handling of his escrow account will no longer obtain.

*Id*. at 690, 703-04, 919 A.2d at 677.

We subsequently readdressed the attorney's misconduct in *Mba-Jonas II*, 402 Md. 334, 936 A.2d 839 (2007). In that matter, the attorney continued to mismanage his escrow account by incurring negative balances and overdrafts, withdrawing more funds from the account than what was received into same, and used funds directed for one client matter in other matters on four occasions. *Id*. at 339-40, 936 A.2d at 841-42. As a result, we upheld the hearing judge's conclusions that the attorney violated MLRCP 1.15, 8.4(a) and (d), and Md. Rules 16-607, 16-609, and Bus. Occ. & Prof. § 10-306. *Id*. at 340-46, 936 A.2d at 842-46.

We also acknowledged the hearing judge's conclusion that the attorney violated MLRPC 8.1 by failing to respond to Bar Counsel's request for an explanation regarding the overdrafts in his escrow account on three occasions, then subsequently responded to

---

[20] The hearing judge determined that the attorney's mismanagement was not a product of intentional deceit or dishonesty, but of "sloppiness." *See Mba-Jonas*, 397 Md. at 697, 919 A.2d at 674.

Bar Counsel with a letter that was "totally non-responsive." *Id*. at 339, 936 A.2d at 842.

Given the overlap in the time between the two disciplinary matters and the substantially

similar violations involved, we considered the attorney's present conduct, including his

prior violations in *Mba-Jonas I*, as a whole. *Id*. at 346, 936 A.2d at 846.

In determining the attorney's sanction, we emphasized the absence of intentional

deceit or dishonesty in the attorney's misconduct. Thus, recounting the hearing judge's

findings in both *Mba-Jonas I and Mba-Jonas II*, we stated:

> Neither of the actions against Mba–Jonas involves an intent to defraud, deceive, or steal from his clients. [The hearing judge] found in the previous case that '[c]learly, he had no intent to defraud or steal from his clients. In fact, many of his problems resulted from his desire to accommodate his clients and to keep them satisfied with his representation.' Likewise, in the present matter, [the hearing judge] found that the '[c]ourt does not believe— nor has it been suggested—that the state of [Mba–Jonas's] escrow account is the result of dishonesty, fraud, deceit or misrepresentation.'

*Id*. at 346-47, 936 A.2d at 846 (internal citation omitted). As a result, we ordered a

continuation of his indefinite suspension with the right to apply for readmission after six

months. *Id*. at 349, 936 A.2d at 847.

Bar Counsel submits that "Respondent's case is more significant than *Mba-Jonas I*

in that, she received two CDAs and had numerous trust account violations." In comparison

to *Mba-Jonas II*, Bar Counsel posits that based upon Respondent's "numerous Rule

violations and conduct surrounding Ms. Sewell-Carpenter's case" she should receive a

sanction similar to the attorney in *Mba-Jonas II*.

We agree. Although Respondent's misconduct and resulting Rule violations bear

resemblance to that of the attorney in *Mba-Jonas I*, the instant matter is distinguishable

because Respondent had the benefit of two CDAs to remediate the exact misconduct that precipitated the charges against her. Additionally, the evidence demonstrated that Respondent repeatedly failed to respond to Ms. Deady's and Bar Counsel's requests for information during this time. Although this is unlike the circumstances in *Mba-Jonas I*, where we ordered indefinite suspension with the right to apply for readmission after ninety-days, it is akin to the attorney's failure to adequately respond to Bar Counsel's requests in *Mba-Jonas II*, where, in addition to several trust account violations, we determined that an indefinite suspension with the right to apply for readmission after six months was warranted.

We also acknowledge that the circumstances in the instant matter are similar to *Mba-Jonas I* and *Mba-Jonas II*, where the hearing judge concluded that the attorney's misconduct was not due to intentional dishonesty or deceit, but "sloppiness." Here, the hearing judge did not find that Respondent's misconduct was a product of intentional dishonesty or deceit, but instead, was due to ignorance of trust account rules, poor law office management, and her illness.

Nonetheless, in determining the appropriate sanction for Respondent's misconduct, we must also consider the aggravating and mitigating factors. Pursuant to Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions, this Court has recognized the following aggravating factors in attorney disciplinary cases:

> (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g)

refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution.

*See Attorney Grievance Comm'n v. Bleecker*, 414 Md. 147, 176-77, 994 A.2d 928, 945-46 (2010). This Court also recognizes the following mitigating factors:

> [A]bsence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n v. Coppola*, 419 Md. 370, 407, 19 A.3d 431, 453 (2011).

The hearing judge acknowledged that despite Respondent's illness during the period of 2014—when she conceded to having no safeguards in place to check mail or her attorney trust account during recuperation from surgery—she still had a professional obligation to protect her clients. The hearing judge also concluded that Respondent's illness does not explain her "uncooperative behavior" towards Mr. Karr, Ms. Deady, and Bar Counsel. The hearing judge expressed concern regarding Respondent's testimony on July 14, 2015, stating:

> [Respondent] represented that the reason she felt a sense of urgency in February of 2013 for Ms. Sewell[-Carpenter] to file a post-judgment motion was that she believed she had to file the motion within ninety days. However, in her letter dated August 10, 2015, Respondent stated that she only testified to that because she heard a 'more experienced' attorney tell her that, and she thought she would throw it 'in the pot' in her disciplinary case before this [c]ourt. It is therefore not clear to this [c]ourt of the extent to which Respondent was being completely forthright in her testimony on July 14, 2015.

Nonetheless, the hearing judge acknowledged Respondent's surgery and period of recuperation in early 2014 as a mitigating factor, despite the fact that Respondent submitted limited documentation[21] evidencing her medical conditions for the time period apart from her testimony concerning her health condition.[22]

A CDA generally serves as a remedial tool to assist attorneys' compliance with the Maryland Rules and Rules of Professional Conduct. Thus, we share in Bar Counsel's concern that Respondent's failure to adhere to the terms under the CDA and Amended CDA, while continuing to engage in conduct which precipitated her CDA, demonstrates a lack of appreciation of the problem.

While we accept the mitigating factor of Respondent's illness during the relevant period, it does not excuse her admitted ignorance of trust account rules; her failure to remediate her misconduct or adhere to the protocols under consecutive CDAs; her lack of cooperation with Ms. Deady and Bar Counsel while under investigation; or her failure to

---

[21] On November 26, 2013, Respondent sent an e-mail to Bar Counsel stating that she had major surgery scheduled for late December 2013. On December 26, 2013, Respondent sent Bar Counsel a one-page note, via fax from Mercy Medical Center indicating that she was scheduled to have surgery on January 6, 2014.

[22] In her exceptions, Respondent contends that while it is understood that she did not meet with Ms. Deady except for one time, there is a significant mitigating circumstance that established that her conduct was not willful. Specifically, that there were several instances in which she and Ms. Deady requested extension of time to prepared reports that were denied by Bar Counsel. We conclude that this contention does not mitigate her misconduct and overrule her exception. The evidence demonstrates that Respondent's Amended CDA was revoked for non-compliance, which included, in substantial part, her failure to meet with Ms. Deady, or otherwise adhere to the protocols as agreed under the CDA.

implement safeguards during an illness or otherwise protect her clients' interests in conformance with the foregoing Rules. Although, during oral argument, Respondent admitted to experiencing difficulties as her mother's caretaker until her death, which may have also impacted her practice, we could not ascertain whether this was shared with Bar Counsel or the hearing judge. Accordingly, we order Respondent indefinitely suspended with the right to apply for readmission after six months.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MD. RULE 16-761(b), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ERICA S. WHITE.**