*Attorney Grievance Commission of Maryland v. Anna G. Aita*, Misc. Docket No. 90, September Term 2016.  Opinion by Hotten, J.

**ATTORNEY DISCIPLINE — SANCTIONS — DISBARMENT**

The Court of Appeals disbarred Respondent, Anna G. Aita, from the practice of law in Maryland.  Respondent violated Maryland Lawyers' Rules of Professional Conduct 1.1, 1.3, 1.4(a) and (b), 1.5, 1.15(a), (c), and (d), 1.16(d), 3.3(a)(1), and 8.4(a), (c), and (d).  Additionally, Respondent violated former Maryland Rules 16-604 and 16-606.1.  These violations stemmed from Respondent's representation of two former clients in immigration matters.  Respondent failed to represent these clients competently and diligently, failed to communicate with them about the status of their cases, failed to appear in court with them, failed to safeguard their funds, charged the client an unreasonable fee, and failed to refund unused immigration filing fees to the client.  Respondent misrepresented material facts to an immigration judge, failed to ascertain the status of the client's case, and failed to advise clients of the status of their cases.  Disbarment is the appropriate sanction for Respondent's misconduct.

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 90

September Term, 2016

_____

ATTORNEY GRIEVANCE
COMMISSION OF MARYLAND

v.

ANNA G. AITA

_____

Barbera, C.J.,
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.

_____

Filed: March 27, 2018

On or about November 18, 2016, the Attorney Grievance Commission of Maryland ("Petitioner"), directed that charges be filed against Anna G. Aita ("Respondent"). On February 16, 2017, Petitioner, acting through Bar Counsel, filed in this Court a Petition for Disciplinary or Remedial Action ("Petition") against Respondent. The misconduct stemmed from Respondent's representation of two former clients in immigration matters. Specifically, Petitioner alleged that Respondent failed to represent these clients competently and diligently, failed to communicate with them regarding the status of their cases, failed to appear in court on their behalf, failed to safeguard their funds, charged the clients an unreasonable fee, failed to refund unused immigration filing fees to the client, misrepresented material facts to an immigration judge, failed to ascertain the status of the clients' cases, and failed to advise the clients of the status of their cases. Based on the misconduct, Petitioner alleged violations of Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.1 (Competence), 1.3 (Diligence), 1.4 (Communication), 1.5 (Fees), 1.15 (Safekeeping property), 1.16(d) (Declining or Terminating Representation), 3.3(a)(1) (Candor Towards the Tribunal), and 8.4(a), (c), and (d) (Misconduct). Petitioner further averred violations of former Maryland Rules 16-604 (Trust Account–Required Deposits) and 16-606.1 (Attorney Trust Account Record-Keeping). [1]

---

[1] Effective July 1, 2016, the Maryland Lawyers' Rules of Professional Conduct ("MLRPC") were renamed the Maryland Attorneys' Rules of Professional Conduct ("MARPC") and re-codified, without substantive change, in Title 19 of the Maryland Rules. Rules governing attorney discipline were also recodified in Title 19 of the Maryland Rules. Respondent's misconduct occurred prior to the recodification and renaming of the relevant rules. Therefore, we refer to the MLRPC, and the Maryland Rules by their former designations, throughout this opinion.

On February 27, 2017, this Court transferred the matter to Judge Glenn L. Klavans ("the hearing judge"), of the Circuit Court for Anne Arundel County, to conduct an evidentiary hearing ("the hearing"). The Clerk of the Circuit Court for Anne Arundel County issued a summons on February 28, 2017. The Petition and summons were served on Respondent on April 3, 2017. After receiving an extension of time, an Answer was filed on May 3, 2017. Petitioner and Respondent met with the hearing judge for a scheduling conference on April 21, 2017. Petitioner filed an Amended Petition for Disciplinary or Remedial Action on May 18, 2017. Respondent filed a timely Answer on June 2, 2017. An evidentiary hearing took place, from July 24, 2017, through July 27, 2017. At the conclusion of the hearing, the hearing judge directed the parties to file Proposed Findings of Fact and Conclusions of Law by August 21, 2017.

## THE HEARING JUDGE'S FINDINGS OF FACT

We summarize the hearing judge's findings of fact. Respondent was admitted to the Maryland Bar on June 19, 2002. She began a solo law practice in May of 2003, and described her areas of concentration as immigration, criminal, traffic, family, and civil litigation. She speaks, reads, and writes in both English and Spanish. Although Respondent resides in Easton, Maryland, she maintains her office for the practice of law in Glen Burnie, Maryland. Respondent testified that she has experienced recurrent health problems, including problems with sciatica on both sides, and bulging discs in her back. She also testified that she had vertigo in 2013 and micro colitis, which is similar to irritable

2

bowel syndrome. Respondent did not present any evidence confirming the aforementioned diagnoses or treatment. The misconduct related to this investigation by Bar Counsel involves Respondent's representation of two clients, Isaac Escalante and Ingris Ardon.

## Representation of Isaac Escalante

Isaac Escalante ("Escalante") is a native of Guatemala who entered the United States in February of 2002. He resides with his partner, Francisca Calmo Ramos ("Calmo Ramos"), in Sudlersville, Maryland. They have five children together who are all United States citizens. Escalante does not speak or read English fluently. In March of 2012, Escalante was arrested for traffic violations in Queen Anne's County, Maryland, and was taken into custody by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement. Thereafter, Escalante was placed in removal proceedings.

In April of 2012, Calmo Ramos retained Respondent to represent Escalante in his criminal and immigration matters. A retainer agreement was provided to Escalante in both English and Spanish. The total fee for representation in both cases was $2,500. Escalante paid Respondent $2,500 in increments. The funds were not held in an attorney trust account, and had not been previously earned at the times of payment. Escalante did not provide his informed consent, in writing, agreeing to the deposit of his advance fee payments in a non-trust account. Respondent contended that the payments were not placed in an attorney trust account because they were received too close in time to when they were earned, or alternatively, that such incremental payments had been earned. However,

Respondent produced no account records, timesheets, or other evidence to substantiate these claims. Escalante was satisfied with the services that Respondent rendered regarding his traffic case.

In Escalante's immigration case, Respondent filed an Application for Cancellation of Removal with the immigration court. Sometime in 2012, during Escalante's detention, Respondent came to his house to sort through the family's personal documents with Calmo Ramos, to ascertain which documents would be helpful in supporting Escalante's application for Cancellation of Removal. Respondent made copies of the family's original documents, but never returned the originals. Respondent also did not file any of the documentation she collected from Calmo Ramos. During the hearing, Respondent testified that these documents were not helpful to Escalante's case, but also denied ever receiving the supporting documentation.

A Master Calendar hearing[2] was scheduled in Escalante's case for November 26, 2013 at 1:00 p.m. at the immigration court in Baltimore, Maryland. At 1:05 p.m. that day, Respondent sent Escalante a text message indicating that her partner attorney, Charles Yates ("Yates"), would be substituting for her in immigration court. In actuality, Yates was not Respondent's partner, but rather an independent attorney acting as a substitute.

---

[2] A Master Calendar hearing is an individual's first appearance before an immigration judge in removal proceedings. Immigration Court Practice Manual, Ch. 4: Hearings before Immigration Judges, https://www.justice.gov/sites/default/files/eoir/legacy/2012/11/08/Chap%204.pdf, (https://perma.cc/LP2G-VAMA) (last visited February 27, 2018).

Escalante replied to Respondent by text message, "[w]hen is my court?" At 2:10 p.m., Respondent replied, "[t]oday 1:00 p[.]m." Escalante replied, "I didn't know." At the time that he received Respondent's text message at 2:10 pm, Escalante was working on the Eastern Shore of Maryland. Yates appeared at the immigration court on Respondent's behalf, but Escalante did not appear. Yates contacted Respondent to alert her that Escalante had failed to appear, but received no response. The immigration judge ordered Escalante removed from the United States of America *in absentia*. Escalante contacted Respondent on the afternoon of November 26, 2013, through a text message saying "I am Isaac, please answer me. I need to speak with you." Respondent never replied. Escalante sent another text message on November 27, 2013, inquiring about the status of his case. Again, Respondent did not reply.

Respondent initially testified that she had a telephone conversation with Escalante on the morning of November 26, 2013, and advised him of the hearing and Yates' representation. Later, Respondent changed her testimony and asserted that she left Escalante a telephone message. Additionally, Respondent testified that she failed to appear on behalf of Escalante in immigration court because her cat died.

Respondent presented a copy of a letter in English from her client file, addressed to Escalante, dated October 19, 2013. The letter reflects that a Master Calendar hearing is scheduled for November 26, 2013, at 1:00 pm. The letter also states "[i]f you do not

5

understand this document, I further note that it is your responsibility to have it translated." No proof was offered that the letter was mailed. Escalante never received it.

On January 20, 2014, Escalante again attempted to contact Respondent by text and asked if he could reopen his immigration case. Respondent replied, "[y]ou can. I am going to need 295 dollars." On February 18, 2014, Respondent filed a Motion to Reopen Escalante's case. Escalante paid the $110 filing fee for the motion. Respondent deposited Escalante's fees into her firm's operating account. In the Motion to Reopen, Respondent falsely represented to the immigration court that Escalante failed to appear for his hearing on November 26, 2013, because Escalante's "car broke down while he was over one hour away in an area with no taxi service and no public transportation. He was unable to find someone to bring him to court on the day of his [M]aster [C]alendar hearing."

On February 19, 2014, the immigration judge granted the Motion to Reopen and set another hearing for March 11, 2014. Respondent never informed Escalante that his case was reopened and scheduled for another hearing. On March 11, 2014, both Escalante and Respondent failed to appear, and Escalante was ordered removed *in absentia* for a second time.

In 2015, Escalante was arrested by DHS, taken into custody, and denied bond because of the final order of removal. After learning of Escalante's arrest, Calmo Ramos telephoned Respondent. Calmo Ramos paid Respondent $200 to file a second Motion to Reopen on Escalante's behalf. Respondent did not file the Motion to Reopen and later sent

6

Calmo Ramos a money order for $295, representing the motion filing fees, the Cancellation of Removal application fee, and a DHS biometrics fee. Escalante filed a complaint with the Attorney Grievance Commission in July of 2015. Escalante first learned that he was ordered removed *in absentia* after he filed a complaint with the Attorney Grievance Commission.

Escalante subsequently retained Rene Swafford ("Swafford"), Esquire. Swafford tried several times to contact Respondent by telephone, and left two messages for her, but Respondent never returned the calls. In September of 2015, Swafford requested a copy of Escalante's client file from Respondent, but received no response. Respondent contended that she did not provide Escalante's file because Swafford did not present a release signed by Escalante, granting permission. In December of 2015, Bar Counsel requested that Respondent provide Escalante's file to Swafford. In January of 2016, Respondent complied.

### Representation of Ingris Ardon

Ingris Ardon ("Ardon") is a native of Guatemala, who does not speak or read English fluently. She resides in Reisterstown, Maryland with her three children, who are all United States citizens. In July 2013, Ardon retained Respondent to represent her at her individual calendar hearing[3] on October 29, 2013. Pursuant to the retainer agreement,

---

[3] "Evidentiary hearings on contested matters are referred to as individual calendar hearings or merits hearings. Contested matters include challenges to removability and applications

(continued . . . )

which was in both English and Spanish, Respondent charged Ardon a flat fee of $3,000 for the representation, with $1,000 due at signing, and the balance due over a period of four months in installments of $500 each. Ardon paid Respondent a total of $2,500 in increments. The funds were not deposited into a trust account, and were not previously earned at the times of payment.

Ardon also paid Respondent $185 on September 14, 2013, to be used for the filing fee for the Application for Suspension of Deportation and biometric fee charged by DHS. Respondent did not deposit this payment into a trust account. Ardon did not provide her informed consent, in writing, agreeing to the deposit of her advance fee payments and filing fee in a non-trust account. Respondent claimed that such payments were not deposited into a trust account because they were received so close in time to when they were earned, or alternatively, that because they were paid in increments, the incremental payments had been earned. However, Respondent could produce no evidence, account records or timesheets to substantiate these claims.

Respondent instructed Ardon to bring documents to her office to demonstrate her eligibility for Suspension of Deportation. Ardon provided Respondent with 585 pages of documents. Respondent also instructed Ardon to write out a personal history. Ardon did

(. . . continued)
for relief." Immigration Court Practice Manual, Ch. 4: Hearings before Immigration Judges, https://www.justice.gov/sites/default/files/eoir/legacy/2012/11/08/Chap%204.pdf, (https://perma.cc/LP2G-VAMA) (last visited February 27, 2018).

not understand what she was supposed to compose and sought clarification. Respondent replied that Ardon should seek assistance from her children and canceled several of their appointments. Respondent never filed any applications, pleadings, or supporting documentation on Ardon's behalf. According to Respondent, she was not provided sufficient proof of continuous physical presence, or proof of hardship to Ardon's children, should Ardon be deported to Guatemala.

In October 2013, Respondent reminded Ardon that a $500 payment was due on October 20, 2013. On October 19, 2013, Respondent granted Ardon an extension. On October 21, 2013, Ardon texted Respondent that, "I sent the check by mail. I hope it's not lost and you receive it." Ardon followed up by text on October 24, 2013 by asking, "[t]ell me did you get the check," and Respondent replied, "[y]es." However, Respondent later sent correspondence to Ardon claiming that she never received the $500 payment in October of 2013. No proof was presented regarding receipt of the check, or process by any bank. Ardon was supposed to be fingerprinted by DHS as a requirement for her Application for Suspension of Deportation. Respondent advised Ardon on the procedure for fingerprinting via text message. After going to several administrative offices within DHS to secure documents for fingerprinting, Ardon was unable to do so.

On October 29, 2013, Ardon and her three children appeared in immigration court for the scheduled individual hearing. Respondent sent Ardon a text message just prior to the scheduled hearing that she would not be coming to court with her because Respondent's

9

family member had an emergency. However, Respondent testified that her cat sustained a fatal blood clot. Respondent informed Ardon that a substitute attorney, Yates, would appear on her behalf and seek a continuance. Ardon had never met Yates previously. When Yates arrived, he told Ardon and her family "I know nothing about your case." It appeared that the hearing had been rescheduled due to a government shutdown. However, Respondent was unaware of the rescheduling, and made no effort to ascertain its status.

On December 18, 2013, Respondent sent Ardon a letter releasing her as a client because of Ardon's failure to make the October and November 2013 payments pursuant to the retainer agreement. The letter also indicates that Respondent was going to withdraw from Ardon's case, but Respondent never entered her appearance with the court. On December 20, 2013, Respondent sent Ardon a letter informing her that Respondent would apply the $185 filing fee towards Ardon's balance. Ardon requested a refund of all of her money, but Respondent failed to refund funds specifically paid to her in trust for the payment of filing fees.

**Expert Witness Testimony**

Petitioner called John F. Gossart, Jr. ("Judge Gossart"), a retired federal immigration Judge, as an expert in immigration law and immigration court procedure. Judge Gossart testified that Respondent's representation of Escalante and Ardon was incompetent. Judge Gossart opined that an Application for Cancellation of Removal is a discretionary one, and while Escalante met the basic requirements under the law, he would

10

need supporting evidentiary documents to demonstrate that removal to Guatemala would result in extreme and unusual hardship to his five children. According to Judge Gossart, the application Respondent filed was bare bones, illegible in parts, and lacked supporting evidence. The hearing judge did not accept Judge Gossart's opinions regarding the merits of Escalante's case, but conceded that the documents Respondent did not file were relevant.

There was conflicting evidence in Ardon's case regarding her eligibility for relief, because Ardon could not demonstrate seven years of continuous physical presence in this country. Judge Gossart testified that Ardon had provided Respondent with evidence to support an application for Suspension of Deportation. Ardon provided Respondent with bank statements, pay stubs, tax returns, personal references, and her children's school records, among other things, which would have been relevant evidence for such an application. Judge Gossart opined that Respondent's failure to file anything with the immigration court, including a Motion to Continue, an Entry of Appearance, or any supplemental evidence to go forward on Ardon's Application for Suspension of Deportation, reflected incompetence. In Ardon's case, the immigration court would not have been able to notify Respondent that the hearing was going to be postponed because Respondent had not filed an Entry of Appearance.

Respondent called Ronald Richey ("Richey"), Esquire, to testify on her behalf as an expert in immigration law and immigration court procedure. Richey opined that Respondent's representation of Escalante and Ardon was competent and diligent, but he

also provided conflicting testimony. Regarding Escalante, Richey said that he would have filed more supporting documents, not sent a Spanish-speaking client a letter in English, and that an attorney should file a Motion to Reopen a case for a detained client, not ignore the matter. Further, Richey asserted that an attorney could call the immigration court, visit the court, or call a toll free telephone number to inquire about the status of a matter.

Regarding representation of Ardon, Richey explained that it was not a violation of a standard of care to request a continuance when a client has not provided all the necessary evidence to support her case. However, Richey determined that the evidence Ardon provided to Respondent was relevant.

### Respondent's Testimony

Respondent's explanation as to why she did not place client funds in a trust account was because she "earned the fees fairly quickly," and that there were occasions when she could not deposit money in the bank for ten or fifteen days. She testified that she wished she had discontinued Ardon's representation sooner. The hearing judge noted a lack of remorse, and that Respondent was protecting her own self-interest. On cross-examination, Respondent admitted that she has been practicing immigration law for fourteen years. She was familiar with a toll-free telephone system to check on matters, but could not explain why she did not follow up on Escalante's case. When confronted with her failure to inform Escalante of his hearing dates, she blamed him for not returning her calls. Regarding Escalante's new counsel's request for his file, Respondent initially denied receiving the

12

calls, but then blamed Swafford for not stating the reason for her call. Regarding the $500 payment sent by Ardon in October 2013 that Respondent later denied receiving in a letter, Respondent explained that she did not return Ardon's fees because she felt Ardon still owed her money.

Various friends, colleagues, and associates of Respondent testified on her behalf that she was honest and a good lawyer. None of those witnesses were knowledgeable on the subject of immigration law or Respondent's reputation within the immigration law community, except Yates.

## THE HEARING JUDGE'S CONCLUSIONS OF LAW

Based on the aforementioned findings of fact, the hearing judge concluded that the evidence concerning Respondent's representation of Escalante and Ardon established violations of MLRPC 1.1 (Competence), 1.3 (Diligence), 1.4(a) and (b) (Communication), 1.5 (Fees), 1.15(a), (c), and (d) (Safekeeping Property), 1.16(d) (Declining or Terminating Representation), 3.3(a)(1) (Candor Towards the Tribunal), and 8.4(a) and (c) (Misconduct). The hearing judge additionally found violations of former Maryland Rules 16-604 and 16-606.1. The following are summaries of the relevant MLRPC and the hearing judge's reasoning for concluding Respondent violated each part:

### Rule 1.1 Competence

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

Respondent violated Rule 1.1 in Ardon's matter by failing to pursue any relief before the immigration court, all while allowing the client to rely on Respondent's representations that she would do so. In both Escalante's and Ardon's matters, Respondent violated Rule 1.1 by sending Yates, a substitute attorney with no knowledge of the matters and no relationship with the clients, on her behalf.

## Rule 1.3 Diligence

A lawyer shall act with reasonable diligence and promptness in representing a client.

Respondent violated Rule 1.3 in Escalante's case because she failed to ensure that he was aware of his November 26, 2013, hearing or to file any of his supporting evidence with the court. Respondent further lacked diligence because she failed to file an Entry of Appearance, supporting documentation, witness list, or a Motion to Continue on Ardon's behalf.

## Rule 1.4 Communication

(a) A lawyer shall:
  (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
  (2) keep the client reasonably informed about the status of the matter;
  (3) promptly comply with reasonable requests for information; and
  (4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

14

In Escalante's matter, Respondent violated Rule l.4(a) when she failed to keep him reasonably informed about the status of his case, most particularly, the scheduled hearing dates. She failed to promptly comply with reasonable requests for information from Escalante and his partner, Calmo Ramos. Regarding Ardon, Respondent violated Rule 1.4(a) when she failed to keep her reasonably informed regarding the status of her case.

In Escalante's case, Respondent purportedly sent him letters in English, a language he cannot read or write. Respondent's inclusion in the letter that "[i]f you do not understand this document… it is your responsibility to have it translated" makes clear that Respondent violated Rule l.4(b) when she did not communicate with the client in a manner that allows the client to make an informed decision.

### Rule 1.5 Fees

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.

15

In Ardon's matter, Respondent's fee of $3,000 ($2,500 of which was paid) constituted an unreasonable fee, because Respondent filed nothing on her behalf.

## Rule 1.15 Safekeeping Property

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title I6, Chapter 600 of the Maryland Rules[ ].

\*\*\*\*

(c) Unless a client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

\*\*\*\*

In both Escalante's and Ardon's cases, Respondent failed to hold any of the clients' funds in an attorney trust account, including their filing fees for Cancellation of Removal for Escalante and Suspension of Deportation for Ardon. Both clients were also required to pay an $85 fee to DHS to be fingerprinted, and those funds were also not held in an attorney trust account. Respondent had not earned such fees when paid, nor did she have the clients' informed consent, in writing, to hold these funds outside of the trust account. In Ardon's

16

case, Respondent also violated Rule 1.15(d) because she failed to refund $185 paid for Ardon's fingerprint and biometrics fees, and rather kept the fees for herself.

## Rule 1.16 Declining or Terminating Representation

**\*\*\*\***

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

In Escalante's case, Respondent violated Rule 1.16(d) by failing to forward his file to his new attorney, Rene Swafford, after she made several requests. In Ardon's case, Respondent violated Rule 1.16(d) when she failed to refund Ardon's property, specifically, the $185 that she gave Respondent to be used for DHS filing fees.

## Rule 3.3 Candor Toward the Tribunal

(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]

**\*\*\*\***

In Escalante's case, Respondent violated Rule 3.3(a)(1) when she falsely stated in the February 18, 2014, Motion to Reopen that Escalante failed to appear for his immigration hearing on November 26, 2013, because his "car broke down while he was over one hour away in an area with no taxi service and no public transportation. He was unable to find someone to bring him to court on the day of his [M]aster [C]alendar hearing."

17

This statement was false. Escalante testified credibly that he did not appear for his Master Calendar hearing on November 26, 2013, because Respondent never informed him. Escalante's testimony is supported by text messages between him and Respondent from November 26, 2013, when Escalante texted, "[w]hen is my court [date]?" and Respondent replied "[t]oday at 1:00 pm[,]" to which Escalante responded, "I didn't know."

**Rule 8.4 Misconduct**

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

\*\*\*\*

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct that is prejudicial to the administration of justice[.]

\*\*\*\*

It is a violation of Rule 8.4(a) for an attorney to violate or attempt to violate any of the Rules. Therefore, because Respondent has violated Rules 1.1, 1.3, 1.4(a) and (b), 1.5, 1.15(a), (c) and (d), 1.16(d), and 3.3(a)(l), it follows that she has violated Rule 8.4(a) in both the Escalante and Ardon matters. Respondent violated Rule 8.4(c) for the same reasons that she violated Rule 3.3(a)(l). Her statement in the Motion to Reopen filed on Escalante's behalf that he failed to appear for court because his car broke down was a misrepresentation. The hearing judge did not find a violation by clear and convincing evidence of Rule of 8.4(d) because no evidence was produced that Respondent's actions were likely to impair public confidence in the profession.

18

## Maryland Rule 16-604. Trust Account- Required deposits.

Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person.

Respondent violated former Rule 16-604 in both Escalante and Ardon's cases when she failed to place any of the clients' funds in an attorney trust account.

## Maryland Rule 16-606.1 Attorney Trust Account Record-Keeping

(a) **Creation of Records.** The following records shall be created and maintained for the receipt and disbursement of funds of clients or of third persons:

> (1) Attorney trust account identification. An identification of all attorney trust accounts maintained, including the name of the financial institution, account number, account name, date the account was opened, date the account was closed, and an agreement with the financial institution establishing each account and its interest-bearing nature.

> (2) Deposits and disbursements. A record for each account that chronologically shows all deposits and disbursements, as follows:

>> (A) for each deposit, a record made at or near the time of the deposit that shows (i) the date of the deposit, (ii) the amount, (iii) the identity of the client or third person for whom the funds were deposited, and (iv) the purpose of the deposit;

>> (B) for each disbursement, including a disbursement made by electronic transfer, a record made at or near the time of disbursement that shows (i) the date of the disbursement, (ii) the amount, (iii) the payee, (iv) the identity of the client or third person for whom the disbursement was made (if not the payee), and (v) the purpose of the disbursement;

>> (C) for each disbursement made by electronic transfer, a written memorandum authorizing the transaction and identifying the attorney responsible for the transaction.

19

(3) Client matter records. A record for each client matter in which the attorney receives funds in trust, as follows:

    (A) for each attorney trust account transaction, a record that shows (i) the date of the deposit or disbursement; (ii) the amount of the deposit or disbursement; (iii) the purpose for which the funds are intended; (iv) for a disbursement, the payee and the check number or other payment identification; and (v) the balance of funds remaining in the account in connection with the matter; and

    (B) an identification of the person to whom the unused portion of a fee or expense deposit is to be returned whenever it is to be returned to a person other than the client.

****

Respondent failed to keep any records of funds received in both Escalante and Ardon's matters as required by former Rule 16-606.1.

## Aggravating and Mitigating Factors

The hearing judge found nine aggravating factors, among the list of aggravating factors recognized by the American Bar Association, and this Court. In *Attorney Grievance Commission of Maryland v. Shuler*, 443 Md. 494, 506–07, 117 A.3d 38, 46 (2015), this Court explained that the following aggravating factors should be considered:

(1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the Maryland Rules or orders of this Court or the hearing judge; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

As for the aggravating factors, the hearing judge concluded factors two, three, four, six, seven, eight, nine, ten, and twelve were present.

This Court has also recognized mitigating factors established by the American Bar Association in fashioning sanctions, and also determining whether any aggravating and mitigating factors are present. *See Attorney Grievance Comm'n of Maryland v. McDonald*, 437 Md. 1, 45, 85 A.3d 117, 143 (2014) (explaining that was review "American Bar Association [] *Standards for Imposing Lawyer Sanctions* (1992) for guidance in determining an appropriate sanction, including whether any aggravating factors are present in relation to the misconduct."). Mitigating factors include the following:

> Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance Comm'n of Maryland v. White*, 448 Md. 33, 73, 136 A.3d 819, 842 (2016). Respondent has no prior disciplinary record, and a positive reputation.

## STANDARD OF REVIEW

It is well established that "[t]his Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance Comm'n of Maryland v. Hodes*, 441 Md. 136, 168, 105 A.3d 533, 552 (2014) (internal quotations omitted). At

21

all times, Petitioner has the burden of proving the allegations against the Respondent by clear and convincing evidence. *Attorney Grievance Comm'n of Maryland v. Edib*, 415 Md. 696, 706, 4 A.3d 957, 964 (2010). *See also* Md. Rule 16-757(b) ("[The Commission] has the burden of proving the averments of the petition by clear and convincing evidence."). As we have often explained:

> We conduct an independent review of the record and accept the hearing judge's findings of fact unless they are clearly erroneous. Deference is accorded to the hearing judge's findings, who is in the best position, as the fact-finder, to assess the credibility of a witness. Findings of fact to which neither party takes exception may be treated by us as conclusively established. However, if exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof outlined in Md. Rule 16–757(b).[4] We review *de novo*, the hearing judge's conclusions of law.

*White*, 448 Md. at 50, 136 A.3d at 828–29 (internal citations, quotations, and brackets omitted).

## DISCUSSION

Both parties presented exceptions to the hearing judge's findings of fact and conclusions of law. Petitioner's sole exception rests on the hearing judge's conclusion that Respondent did not violate MLRPC 8.4(d). Respondent asks us to overrule Petitioner's

---

[4] Former Md. Rule 16-757(b) provides:

> **(b) Burdens of Proof.** The [Commission] has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or attenuation has the burden of proving the defense or matter by a preponderance of the evidence.

22

exception, and presents her own factual and legal challenges to the hearing judge's rulings and the appropriate disposition in this case.

## Respondent's Exceptions

Respondent's exceptions one through seven are factual in nature, while exceptions eight through eighteen are legal in nature. As explained *supra*, we accept the hearing judge's findings of fact unless clearly erroneous. *Attorney Grievance Comm'n of Maryland v. Lara*, 418 Md. 355, 364, 14 A.3d 650, 656 (2011). A hearing judge's factual finding is not clearly erroneous "[i]f there is any competent material evidence to support [it]." *YIVO Inst. for Jewish Research v. Zaleski*, 386 Md. 654, 663, 874 A.2d 411, 416 (2005). "We review, *de novo*, the hearing judge's conclusions of law." *White*, 448 Md. at 50, 136 A.3d at 829. As we shall explain *infra*, Respondent's factual and legal exceptions are overruled.

### *Exception One*

Respondent excepts to the adverse findings concerning Respondent's credibility as a witness. Respondent contends that where she gave inconsistent statements, the hearing judge failed to sufficiently consider that she was testifying to matters that occurred between 2012 and 2015, and that her recollection, understandably, had dimmed in the interim. Further, Respondent asserts that the stress of the proceedings may have inhibited her ability to recall the events. Respondent also called fifteen character witnesses including judges, attorneys, and former clients, who all testified to Respondent's honesty and credibility generally, which the hearing judge failed to adequately credit.

23

We do not believe that the hearing judge erroneously found that Respondent was not a credible witness, or that the testimony of Respondent's witnesses was not credible. The hearing judge's findings of fact reflect that Respondent's testimony was considered, and that her inconsistent statements were weighed, in conjunction with the other testimony presented. For example, Respondent excepts that the stressful four day trial diminished her ability to recall matters as clearly as she would have under normal circumstances. When questioned about whether Respondent received a call or letter from Swafford about Escalante's file, Respondent initially denied receiving any communication. Respondent later acknowledged that she received a phone call, but blamed Swafford for not indicating the reason for her call. When pressed further about a letter from Swafford, Respondent replied "every now and then, my fax breaks…." Based on the inconsistencies in the testimony, it was not erroneous to credit Swafford's testimony over Respondent's.

Where Respondent called character witnesses to testify regarding her honesty and credibility, the hearing judge considered their testimony, but also considered the gravity of the conduct alleged by two different clients. Accordingly, it was not improper to weigh substantiated evidence over testimony that Respondent is generally an honest person.

*Exception Two*

Respondent secondly excepts that there was no evidence to substantiate the fact that Escalante's payments "were not deposited into a trust account because they were received so close in time to when they were earned, or alternatively, that because they were paid in

24

increments, such incremental payments had been earned." Respondent asserts that she and Escalante had a $2,500 fee arrangement, paid in increments of $1,000 per month. Although Escalante agreed to a flat fee arrangement, Respondent indicated that her rate was $200 per hour. Respondent testified that as soon as she was retained, she interviewed Escalante in detention, which lasted seven or eight hours. She also represented Escalante in a bail hearing in May 2012, met with him in June, July, and August 2012, and represented him in immigration court in July 2012. Thus, Respondent alleged that she earned her fees as Escalante paid her.

Respondent produced no evidence, account records, or timesheets to substantiate her claims, so those claims were rejected by the hearing judge. It was not clearly erroneous to find that Respondent did not earn the fees when evidence was produced that Respondent did not obtain Escalante's informed consent, in writing, agreeing that his payments would be held outside of a trust account, and Respondent produced no evidence to rebut the finding.

*Exception Three*

Respondent's third exception is to the hearing judge's findings concerning the documents that Escalante and Calmo Ramos provided in support of Escalante's Application for Cancellation of Removal. Respondent contends that the hearing judge made no findings concerning the relevancy of the documents to Escalante's case, and the hearing judge did not identify which of the documents should have been submitted.

25

Respondent argues that most of these documents were irrelevant to Escalante's case and, even if submitted, would not have secured Escalante the immigration relief he sought.

Respondent's own testimony is inconsistent regarding whether these documents were ever received. Respondent maintained that she never received the documents because Escalante was always "too busy to get them[,]" but also that the documents were irrelevant. Respondent would have had to review some documentation to determine whether the documents were legally irrelevant. Considering the inconsistency of this argument and Respondent's own statements, it was not clearly erroneous for the hearing judge to find that Escalante and Calmo Ramos gave Respondent documentation that she did not file.

*Exception Four*

Fourth, Respondent excepts to the hearing judge's findings that Escalante did not receive Respondent's October 19, 2013, letter informing him of a Master Calendar hearing in the immigration court on November 26, 2013, and the hearing judge's finding that other letters were not actually mailed. Respondent suggests that there was no evidence reflecting that she did not mail letters to Escalante; that Escalante has lied under oath during a deposition previously; and that Escalante had a strong motive to deny receiving notice of the November 26, 2013, hearing because the Motion to Reopen his immigration case was premised on the claim that he had no notice of the prior hearing.

As a preliminary matter, where an attorney attempts to shift blame onto the client, we prefer to focus squarely on the conduct of the attorney. *Attorney Grievance Comm'n*

26

*of Maryland v. Bocchino*, 435 Md. 505, 530, 80 A.3d 222, 236 (2013). Respondent presented a letter from the client file dated October 19, 2013, informing Escalante of the November 26, 2013, hearing. The letter was entirely in English, a language Escalante neither reads nor speaks fluently. Respondent did not present evidence to support that the letter was actually sent. Respondent's claim that she sent Escalante notice of the November 26, 2013, hearing is at odds with Escalante's text messages to Respondent on the same day, asking when his hearing was scheduled. When Respondent replied that the hearing was that day, Escalante pleaded to speak with the Respondent, but she never answered. Based on the text messages reflecting that Escalante was not aware of the hearing, and Respondent's failure to rebut a showing that any other letters were actually mailed, it was not clearly erroneous to find that the other letters were never mailed.

*Exception Five*

In her fifth exception, Respondent contests the hearing judge's finding that her statement to the immigration court at the February 18, 2014 hearing for the Motion to Reopen Escalante's case was "false," and that "Escalante failed to appear for his immigration court hearing because Respondent failed to properly advise him of same[.]" Respondent asserts that she advised Escalante of his court date in the November 26, 2013, letter, but Escalante failed appear. She argues that after reminding Escalante of his court date at 1:06 p.m. by text message, he could have found a way to get to court, but chose not to do so. Respondent's allegation is premised on the fact that Escalante had problems with

27

arranging transportation in the past, so on this particular occasion, it was appropriate to conclude that he had trouble arranging transportation to court.

For the same reasons that the hearing judge found that Respondent never sent notice of Escalante's November 26, 2013 hearing, we conclude that the hearing judge properly found that Respondent made a false statement to the immigration court. Escalante's text message to Respondent at 1:05 p.m. saying "[w]hen is my court?... I didn't know[,]" is inconsistent with Respondent's testimony to the court that Escalante had car troubles. Accordingly, we decline to disturb the hearing judge's finding that Respondent's statement was false.

*Exception Six*

Respondent disputes the hearing judge's finding that Respondent did not earn fees on Ardon's case before or soon after Ardon made payments. Respondent presented her own records showing she spent more than nineteen hours on Ardon's case. Ardon agreed to pay Respondent $3,000 in installments for the entire representation. Ardon retained Respondent on July 25, 2014. Based on Respondent's records, at her hourly rate of $200, by August 5, 2013, she spent seven hours working on Ardon's case, and thus had earned $1,400, but Ardon had only paid her $1,000.

Respondent's framing of the facts materially omits that Ardon paid Respondent $1,000 when Ardon signed the retainer agreement. The $2,000 balance was to be paid in $500 installments over four months. None of the fees were ever deposited in a trust

28

account. As Ardon paid $1,000 at the beginning of the representation, upon executing the retainer agreement, Respondent could not have already earned the fee.

*Exception Seven*

Respondent excepts that the hearing judge did not credit her testimony that "[t]here were times when, you know, it would be 10 or 15 days before I could go—daytime, you know, to the bank to drop off the money." It appears that the hearing judge found this testimony to be not credible because it was proposed as an excuse for why Respondent failed to hold her client's funds in a trust account. As such, it was not clearly erroneous to reject being busy as a viable excuse for failing to properly handle a client's fee payments.

*Exception Eight*

Respondent excepts to the conclusion that she violated Rule 1.1, the duty of competency. Her reasoning is that she properly advised Escalante and Ardon throughout her representation. Additionally, she asserts that use of the substitute attorney, Yates, was not *per se* incompetent, as concluded by the hearing judge. Rule 1.1 requires that an attorney represent clients competently. A violation occurs when an attorney is not "sufficiently thorough or prepared." *Attorney Grievance Comm'n of Maryland v. Brady*, 422 Md. 441, 457, 30 A.3d 902, 911 (2011). Clear and convincing evidence exists that Respondent was not sufficiently thorough or prepared during her representation of both Escalante and Ardon.

Respondent's representation of Escalante was incompetent because she failed to notify him of his court dates, failed to appear on his behalf, and failed to adequately pursue

29

the appropriate relief on his behalf. Respondent alleges that she properly advised Escalante of his court dates by letter. The text messages reflecting that Escalante was not aware of those dates demonstrates that Respondent was not sufficiently thorough in notifying Escalante of his obligation to attend.

Respondent failed to appear on Escalante's behalf after the Motion to Reopen was granted. Respondent alleges that she never received notice that the Motion to Reopen had been granted. Respondent also never inquired on the status of Escalante's Motion to Reopen, despite her own expert's testimony that she could have called a toll-free number, or the court, to inquire about the status of his matter. When Escalante was ordered removed *in absentia* as a result of his and Respondent's failure to appear at a hearing for the first Motion to Reopen, Respondent agreed to file a second Motion to Reopen on Escalante's behalf. Respondent never filed the second motion. By failing to file the motion, Respondent did not provide competent representation.

Respondent's representation of Ardon was also problematic. Respondent did not file documents in support of Ardon's application, which Respondent alleged were not relevant or helpful to Ardon's matter. As the hearing judge concluded, it was incompetent for Respondent to tell Ardon that she was pursuing relief on her behalf, all while pursuing no relief whatsoever. Respondent never filed an Entry of Appearance on Ardon's behalf, so that she could receive notification. Respondent's representation of Ardon was legally incompetent, and a violation of Rule 1.1.

As Respondent asserts, use of a substitute attorney is not *per se* incompetent. However, using a substitute attorney and providing no information about the subject of the representation constitutes incompetence. Therefore, Respondent's delegation of representation to Yates was also incompetent.

*Exception Nine*

Respondent excepts to the conclusion that she violated her duty of diligence as prescribed in Rule 1.3. An attorney violates Rule 1.3 when he or she does "nothing whatsoever to advance the client's cause or endeavor." *Attorney Grievance Comm'n of Maryland v. De La Paz*, 418 Md. 534, 554, 16 A.3d 181, 193 (2011) (internal citations omitted). For the reasons that Respondent violated Rule 1.1, she also violated Rule 1.3. Respondent failed to ensure that Escalante was aware of his November 26, 2013, hearing. She then failed to appear on his behalf in his first Motion to Reopen, and then never filed a second Motion to Reopen, despite a promise, and fees paid, indicating that she would. Respondent also failed to advance Ardon's case when she failed to file an Entry of Appearance or any supporting documents on Ardon's behalf.

*Exception Ten*

In Exception Ten, Respondent contests that she violated the duty of communication that is reflected in Rule 1.4. She reiterates that she informed Escalante of his hearing dates, and updated Ardon regarding the status of her case, by letters, text messages, and in-person meetings. Rule 1.4(a)(2) and (3) requires a lawyer to keep his or her client reasonably informed about the status of the case, and to promptly respond to reasonable requests for

31

information from the client. *Attorney Grievance Comm'n of Maryland v. Nelson*, 425 Md. 344, 354–55, 40 A.3d 1039, 1045 (2012). Respondent violated Rule 1.4(a)(2) during Escalante's representation when she failed to keep him informed of his hearing dates. Respondent violated Rule 1.4(a)(3) when she failed to respond to Escalante's text messages requesting information. Respondent also violated Rule 1.4(a)(2) when she failed to inform Ardon that she did not file anything on Ardon's behalf.

Rule 1.4(b) requires that "a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." In Escalante's representation, Respondent's failed to notify Escalante or Calmo Ramos that she was not going to file a second Motion to Reopen. Had Escalante known this, he likely would not have paid her additional fees. In addition to determining that Respondent violated Rule 1.4(b) regarding her representation of Escalante, we also conclude that Respondent violated Rule 1.4(b) in her representation of Ardon. Respondent failed to inform Ardon that she would be ineligible for relief, which did not afford Ardon the opportunity to render an informed decision on whether to continue pursuing, and paying for, the representation.

### *Exception Eleven*

Respondent excepts to the conclusion that she violated Rule 1.5 related to fees. Rule 1.5(a) prohibits a lawyer from collecting an unreasonable fee. Respondent's exception is again based on her contention that she spent over nineteen hours working on Ardon's case. Pursuant to Rule 1.5(a)(4) a factor to be considered for determining the reasonableness of

the fee is the "amount involved and the result obtained [.]" We have found violations of 1.5(a) when a lawyer continually fails to file for any meaningful relief on behalf of the client. *See Attorney Grievance Comm'n of Maryland v. Lewis*, 437 Md. 308, 321, 85 A.3d 865, 873 (2014). As in Ardon's representation, a fee is unreasonable where Respondent filed nothing on the client's behalf.

### Exception Twelve

Respondent excepts to the hearing judge's conclusion that she violated Rule 1.15 involving safekeeping property. Rule 1.15(a) requires that client funds be held in a trust account, part (c) does not allow withdrawal of those funds unless the client gives written informed consent, and part (d) requires a lawyer to return any monies the client is entitled to receive. In both Escalante's and Ardon's cases, Respondent failed to hold the clients' funds in an attorney trust account, in violation of Rule 1.15(a). Respondent had not earned such fees when paid, nor did she have the clients' informed consent, in writing, to avoid the use of her trust account, in violation of 1.15(c). In violation of Rule 1.15(d), Respondent never returned Ardon's $185 fingerprint and biometrics fee after terminating the representation. We find clear and convincing evidence that Respondent violated Rule 1.15(a), (c), and (d).

### Exception Thirteen

Respondent asserts that she did not violate Rule 1.16. Rule 1.16(d) requires a lawyer to surrender the client's papers and property at the termination of a representation. Respondent violated Rule 1.16(d) by failing to forward Escalante's documents to him or

33

his new attorney after Swafford's repeated phone calls and requests. Additionally, Respondent violated Rule 1.16(d) when she terminated Ardon's representation, but did not return the $185 filing fees.

*Exception Fourteen*

Respondent disputes the conclusion that she violated Rule 3.3. Rule 3.3(a)(1) requires that a lawyer shall not knowingly "make a false statement of fact or law to a tribunal…." Respondent argues that her statement to the immigration court that Escalante did not appear for the November 26, 2013, hearing because of transportation-related issues, is supported by the evidence, including Escalante's testimony that he had car troubles in the past. As explained *supra*, Respondent advised the immigration court that Escalante did not appear due to car problems, despite receiving a text message from Escalante that he did not know he was due in court that day.

*Exception Fifteen*

Respondent excepts to the hearing judge's conclusion that she violated Rule 8.4, parts (a) and (c). Rule 8.4(a) establishes that it is professional misconduct to violate the MLRPC, and Rule 8.4(c) prohibits conduct involving "dishonesty, fraud, deceit or misrepresentation[.]" For the reasons that Respondent violated the above discussed sections of the MLRPC, she violated Rule 8.4(a). Closely linked to the reasoning that Respondent violated Rule 3.3, she violated Rule 8.4(c). Respondent misrepresented the underlying reason why Escalante did not appear in court for the November 26, 2013, hearing, when she told the court that his car broke down over an hour away, as opposed to

34

the fact that he did not know that he needed to appear in court that day, as he wrote in his text message to Respondent.

*Exception Sixteen*

In this exception, Respondent disputes that she violated former Maryland Rules 16-604 and 16-601.1. As explained *supra*, each of these rules respectively requires client funds be held in a trust account, and that records of the trust account be maintained. Respondent alleges that she earned the attorney's fees in both matters before or soon after the payments were made. She concedes that failing to hold these funds in a trust account was a violation of Rules 16-604 and 16-601.1, but maintains that these were *de minimis* technical violations. Respondent did not hold either client's fees in an attorney trust account or maintain records of her attorney trust account as required by the Maryland Rules. Thus, we find by clear and convincing evidence a violation of former Rules 16-604 and 16.601.1.

*Exceptions Seventeen and Eighteen*

In Exception Seventeen, Respondent objects to the hearing judge's findings of multiple aggravating factors. In Exception Eighteen, Respondent proposes that the hearing judge should have found additional mitigating factors. We categorically reject Respondent's proposition that additional mitigating factors should have been found, and conclude that clear and convincing evidence exists to support findings of aggravating factors two, three, four, six, seven, eight, nine, ten, and twelve.

35

**Petitioner's Exception**

Petitioner takes exception to the hearing judge's finding that Respondent did not violate MLRPC 8.4(d) by engaging in conduct prejudicial to the administration of justice. Specifically, the hearing judge found that "[Respondent's] conduct in both the Escalante and Ardon matters was prejudicial to the individual clients, but no evidence was produced that it had wider consequences likely to impair public confidence in the profession, impact the image of the legal profession or engender disrespect for the court." Petitioner asserts that this finding was contrary to the Court's holding in *Attorney Grievance Commission of Maryland v. Basinger*, 441 Md. 703, 109 A.3d 1165 (2015). In *Basinger*, the Attorney Grievance Commission similarly excepted to a finding that the attorney did not violate MLRPC 8.4(d). *Id.* at 711, 109 A.3d at 1170. Basinger was retained by a client, who was also his sister-in-law, Rosina Keys ("Keys"). *Id.* at 706, 109 A.3d at 1167. In his capacity as her attorney, Basinger sent letters to Keys in which he called her multiple derogatory terms and accused her of being responsible for causing her grandson's death. *Id.* at 713, 109 A.3d at 1170. This Court applied an objective standard, examining whether "a reasonable member of the public could well look askance at an arrangement…and not the subjective standard of whether the lawyer's conduct actually impacted the public and/or a particular person (*e.g.,* a complainant) who is involved with the attorney discipline proceeding." *Id.* at 716, 109 A.3d at 1172–73 (internal quotations and citations omitted).

Respondent asks us to overrule Petitioner's exception. Respondent posits that the hearing judge did not misapply the holding in *Basinger*, and her conduct did not have wider

consequences beyond her two clients. We disagree that an application of the *Basinger's* objective standard merits such a result. A reasonable member of the public could impute Respondent's continued failures to diligently represent her two clients to a failure of the legal profession at large. Four key factors are critical to our consideration. First, Respondent continually failed to appear on behalf of Escalante and Ardon during their immigration hearings. The clients never agreed to be represented by the substitute attorney, Yates, who knew nothing about either client's matter and could not diligently pursue their interests. Second, when Escalante was taken into DHS custody because of Respondent's repeated failure to inform Escalante when he was required to appear, Respondent collected a fee to reopen his matter, which she never did. Third, Respondent falsely informed the immigration court that Escalante did not appear because of car troubles, when in reality Escalante did not appear because he was not informed of his court date. Fourth, Respondent collected payments and documents from Ardon and filed for no relief whatsoever on her behalf.

The public must be able to trust that when utilizing a lawyer's service, the lawyer will appear on their behalf when required and pursue the appropriate remedies. *See Attorney Grievance Comm'n of Maryland v. Walker-Turner*, 428 Md. 214, 232, 51 A.3d 553, 564 (2012) (opining "an attorney plays such an integral role in the judicial process that without his presence the wheels of justice must, necessarily, grind to a halt[]"). Contrary to the hearing judge's determination, we find that Respondent's various failures to appear for her clients and actively pursue results in their matters certainly disparage the

image of the legal profession.  As such, we sustain Petitioner's exception and conclude that Respondent violated MLRPC 8.4(d).

## SANCTION

Upon our *de novo* review of the record before us we hold that Respondent violated MLRPC 1.1, 1.3, 1.4(a) and (b), 1.5, 1.15(a), (c), and (d), 1.16(d), 3.3(a)(1), and 8.4(a), (c), and (d).  Respondent additionally violated former Maryland Rules 16-604 and 16-606.1.  We find the following aggravating factors: a dishonest or selfish motive; a pattern of misconduct; multiple violations of the MLRPC; submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; a refusal to acknowledge the misconduct's wrongful nature; the victim's vulnerability; substantial experience in the practice of law; indifference to making restitution or rectifying the misconduct's consequences; and likelihood of repetition of the misconduct.  We also note two mitigating factors: the absence of prior attorney discipline and positive character or reputation.

Former Maryland Rule 16-759(c) provides that "[t]he Court of Appeals may order (A) disbarment, (B) suspension, (C) reprimand, (D) inactive status, (E) dismissal of the disciplinary or remedial action, or (F) a remand for further proceedings."  Petitioner requests disbarment, and naturally, Respondent requests a lesser sanction.  Respondent recommends that she be required to attend trainings concerning sound practice management as a solo practitioner.  She recommends that any sanction be designed to improve her practice of law, not simply to punish her.

When fashioning a sanction for attorney misconduct, we are mindful that a sanction's primary purpose is to protect the public from the attorney's misconduct. *Basinger*, 441 Md. at 720, 109 A.3d at 1175. In *Attorney Grievance Commission of Maryland v. Thomas*, 440 Md. 523, 558, 103 A.3d 629, 649 (2014), we noted that "[d]isbarment is warranted in cases involving flagrant neglect of client affairs," and particularly considered the vulnerable nature of an immigration client's status. In *Thomas*, we determined disbarment was the appropriate remedy when the attorney failed to respond in a client's matter, and failed to appear at an immigration hearing, resulting in the client's removal from the United States. *Id.* Respondent's clients, both citizens of other countries, with a poor grasp of the English language, comprise a particularly vulnerable class of people. Such clients wholly rely on their lawyer's expertise and assurances that the lawyer is working in their best interest. Respondent's clients were a part of a group easily susceptible to abuse. As such, Respondent's conduct merits disbarment.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST ANNA G. AITA.**

39